# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVSION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : Civil Action No. |
| | : 1:12-CV-3261-WSD |
| v. | : |
| ANGELO A. ALLECA, SUMMIT WEALTH MANAGEMENT, INC., SUMMIT INVESTMENT FUND, LP, ASSET DIVERSIFICATION FUND, LP, and PRIVATE CREDIT OPPORTUNITIES FUND, LP. | : |
| Defendants. | : |

## **OBJECTION TO RECEIVER'S APPLICATION FOR COMPENSATION**

COMES NOW, THE MEYERS GROUP, INC. ("TMG"), a creditor and party in interest in the above-styled case, and hereby objects to the Receiver's application for compensation and reimbursement for expenses [Doc. No. 48], and states as follows:

1.

This case was initiated by the filing of a Complaint by the Securities and Exchange Commission ("SEC") and motion for temporary restraining order against the defendants, alleging a fraudulent "Ponzi scheme" headed by Defendant Angelo A. Alleca resulting in investor losses of approximately $17 million dollars.

1

2.

TMG is believed to be the largest unsecured creditor of Defendant Summit Wealth Management, Inc. ("SWM"), having a claim in excess of $1,000,000.00 based on breach of a promissory note related to the sale of a substantial book of business to SWM on April 21, 2010.  The sale transferred clients from TMG to SWM with approximately $55,000,000.00 Assets Under Management (the "AUM").  With an average client billing rate around 1.25% per annum, it is believed the former TMG clientele generated approximately $1,500,000.00 in gross revenue since SWM agreed to acquire TMG's assets on April 21, 2010.  On even date herewith, TMG filed a Notice of Appearance with a copy of its proof of claim attached thereto.  [Doc. No. 51].

3.

TMG objects to the Receiver's pending application for compensation on a number of bases, as it would appear to seek an award of compensation (over $220,000.00), in excess of the purported current balance in the Receivership's operating account of $190,000.00.  [Doc. No. 48, p. 12, f.n.4].

**Appearance of Impropriety**

4.

First, the Receiver and his firm, Page Perry, LLC appear to have a conflict of interest insofar as Mr. Alleca announced on September 4, 2012 that he had retained

Page Perry, LLC as counsel to defend a purported SEC audit due to the complaints of TMG, "to represent Summit and its employees if necessary. If anyone is going to be interviewed by the SEC I want the lawyer from Page Perry, LLC to be present to protect our interests." (Exhibit A, attached hereto). When this was recently disclosed to the SEC's counsel, the undersigned received a return e-mail purporting to show Page Perry, LLC declined that representation by e-mail on the same date. (Exhibit B, attached hereto). Regardless, even if the return e-mail is authentic, the appearance of impropriety can form the basis to disqualify a fiduciary in circumstances such as this case. *See 3 Collier on Bankruptcy* p. 324.02 at 324-4 (15th ed. Rev. 2004), and cases cited therein.

## Incompetence

5.

Second, the Receiver and his counsel have failed to competently exercise its fundamental obligations, such as filing an Answer to the Complaint. The record in this case indicates the defendants waived service of the summons and complaint in this case on September 19, 2012. [Doc. No. 6, p. 1, ¶1]. Yet now <u>over six months later</u>, SWM has failed to file any answer to the complaint.

6.

Third, similarly, the Receiver failed to deliver timely status reports pursuant to this Court's Order – which were entered <u>on consent</u>. On September 21, 2012,

the SEC filed a Consent Motion for an Order Appointing a Receiver on an Expedited Basis [Doc. No. 8], claiming a Receiver was needed to: (i) help to ensure that Summit Wealth continues operation and that its clients do not suffer further harm; (ii) safeguard the assets of Summit Wealth and the other Defendant Entities; and (iii) begin an immediate channel of communication with the clients of Summit Wealth. [Doc. No. 8, p. 3]. Robert D. Terry was appointed Receiver for the defendant entities by Order on the same day – September 21, 2012. [Doc. No. 9]. In that Order, the Receiver was "directed to file with this Court and serve upon the parties, within 30 days after entry of this Order, a preliminary report setting out the identity, location, and value of the known assets of the Receivership, and any liabilities pertaining thereto." [Doc. No. 9, p. 12, § XIII].

7.

Thereafter, on October 22, 2012, the Receiver filed his First Interim Report. [Doc. No. 25]. In this report, the Receiver stated that his investigation thus far indicated SWM and Alleca "had, essentially, two operations – a registered investment adviser whose operations were relatively transparent to its employees, and which were ostensibly compliant with applicable regulations, and a second operation involving the Alleca Funds which, while largely sold to [certain] Summit clients with the knowledge of [some] Summit employees, were managed by Alleca personally and, it appears, largely offsite." [Doc. No. 25, p. 4, ¶11]. Notably, the

Receiver admitted that he "has not yet made identification of liabilities a priority, although he is aware of several liabilities." [Doc. No. 25, p. 16, ¶65]. He also stated that he "anticipates being able the give the Court a more complete list of receivership liabilities, as well as an updated litigation status in the next interim report." [Doc. No. 25, p. 16-17, ¶65]. In closing, the Receiver represented that he expected "to file his next interim report in approximately 60 days." [Doc. No. 25, p. 18, ¶74]. Over <u>150 days later</u>, he finally did so – yesterday, March 28, 2013. [Doc. No. 50]. But only over a week after filing his application for compensation on March 19, 2012. [Doc. No. 48]. TMG submits the failure to deliver timely and substantive interim reports is detrimental to the administration of the Receivership Estate.

8.

In both the application for compensation [Doc. No. 48] and the Second Interim Report [Doc. No. 50], there are some glaring inconsistencies and admissions of incompetence that should not be paid for at the expense of the Receivership Estate's creditors. For example, in the application, the Receiver asserts that during the time period in which he seeks compensation, September 21, 2012 through December 31, 2012 (the "Time Period"), he focused his efforts on "stabilizing, analyzing, and managing the continuing business of SWM…and substantially completing the process of selling the operating assets of Summit and

eliminating operating expenses, and beginning the claims process." [Doc. No. 48, p. 1-2].  The Receiver later claims "the most critical element of the first few months of the Receivership was the disposition of the operating business as quickly as possible." [Doc. No. 48, p. 10, ¶20].  In the Second Interim Report, the Receiver states how "it became apparent soon after the inception of the receivership that it was not likely that Summit would be able to continue as an ongoing operation…" [Doc. No. 50, p. 3, ¶6].  Compare those statements with the Receiver's "Update" on October 5, 2012, informing the public that:

> My first priority as Receiver is to restore your confidence in Summit and your Financial Advisor.  That is why I immediately took steps to re-establish relationships with one of our brokerage partners so that your Financial Advisor can continue to service your account via TD Ameritrade's brokerage platform.
>
> I have reviewed Summit's business and have spoken with most of the Financial Advisors who service your accounts.  In most instances these Advisers have worked hard to get to know you as clients and have performed excellent service for you in meeting your needs.  In some cases your relationship with your current Summit Adviser goes back several years.  I am confident that your Financial Adviser will continue to serve your accounts as effectively as before.

(Exhibit C, attached hereto).

A little over three months later, on January 29, 2013, the Receiver gave an "Update" that he "substantially completed shutting down the business operations of Summit." (Exhibit C, p. 1).  So on the one hand, the Receiver vouched for the going concern of SWM to its clientele, yet immediately sought to sell the "legitimate" side of the business.

6

9.

In the fee application, the Receiver describes how he and his team dealt with a "mortally injured advisory business and secured contracts for the sale of its component parts," representing an estimated $700,000 for sales of offices or "suboffices." [Doc. No. 48, p.10-11, ¶21]. The Receiver delivered additional detail to these sales in the Second Interim Report. [Doc. No. 50, p. 3-15, ¶¶8-15]. However, noticeably absent was any value given to the Receivership Estate from the Atlanta office involving the former-TMG clientele. That was blundered through imprudent and hostile efforts to alienate the former-TMG clients from Gary Meyers that were jointly serviced with Martin Lysaght.

**The Receiver Folded After Being Accused of Defamation**

10.

On September 24, 2012, one of the Receiver's attorneys, J. Stephen Parker, Esq., called Gary Meyers and threatened him with an "interference claim" if Mr. Meyers were to contact any of "his clients." Soon thereafter, on September 26, 2012, the Receiver delivered a supremely ill-advised letter to SWM's Atlanta clientele, denigrating the competence and management styles of Gary Meyers and Martin Lysaght. (Exhibit D, attached hereto). Apparently, Mr. Lysaght asserted a defamation claim against the Receiver, as indicated by the outside counsel fee billing statement subject to the pending fee application for $1,020.00 to Dow

7

Lohnes PLLC.  (Exhibit E, attached hereto).  Soon thereafter, it appears the Receiver issued a stunning apology letter in Mr. Lysaght's behalf to be delivered to his clientele.  (Exhibit F, attached hereto).  Indeed, while the instant fee application is silent on the issue, the Second Interim Report confirms the Receiver's settlement with Mr. Lysaght for "mutual releases," but conspicuously does not detail what "claims" were asserted against each other.  [Doc. No. 50, p. 17, ¶ 52].

11.

TMG submits not only should the Receiver's attorney's fee invoice to Dow Lohnes PLLC not be awarded,[1] but in addition there is a viable claim against the Receiver and his counsel, Page Perry, LLC, for apparently "giving away" the SWM Atlanta office along with an apology letter in return for a release from Mr. Lysaght.  That being the case even under a "gross negligence or intentional misconduct standard," as required per Section XX of the Modified Order Appointing Receiver.  [Doc. No. 27].

12.

Indeed, at the outset of the receivership, Gary Meyers offered to assist the Receiver in retaining the former-TMG clientele to maximize the value of the estate, as TMG was owed approximately $1,000,000.00.  The Receiver rejected that continued offer as late as October 23, 2012 "because of the Marty Lysaght

---

[1] As well as any time entries for the Receiver investigating his own defense. (See excerpts of billing statements – Exhibit G, attached hereto).

8

situation." In doing so, coupled with the Lysaght blunder, the Receiver independently destroyed any opportunity to preserve the profitable portions of SWM's business. That is a claim that needs to be at a minimum investigated, if not immediately pursued on behalf of the SWM estate – something, obviously, the Receiver is in no position to do.[2] As the other offices and "suboffices" appear to be able to yield approximately $700,000.00 per the Receiver's representation, and it is believed the former-TMG clients AUM on the day of initiation of this action (September 19, 2012) was approximately $45,000,000.00, using a "2x gross revenue" valuation, the market value of the lost Atlanta clientele is estimated by TMG to be in excess of $1,000,000.00. TMG is one of many creditors, albeit believed to be the largest, and the claim regarding a loss of value due to the ill-conceived conduct of the Receiver and his counsel is now an asset of the SWM estate.[3]

## There Are Two Distinct Estates For Creditors

13.

The most striking aspect of the Receiver's reports and fee application is the consistent distinction between the "legitimate" and "illegitimate" sides to the businesses controlled by Angelo A. Alleca. As stated in the Receiver's fee

---

[2] TMG intends to file a motion to remove and replace the receiver, as there are a multitude of competent candidates in the metro-Atlanta area that do not have the apparent conflict of interest, as well as not have to defend substantial claims.

[3] As opposed to possible defamation claims asserted by Gary Meyers, individually.

application, "this particular receivership has involved the intersection of both an operating investment advisory business with 20 employees and hundreds of clients spread among three offices, and an illegitimate multi-year Ponzi scheme. [Doc. No. 48, p. 6-7, ¶15].

14.

More striking is the Receiver's incredible admission that it is "exploring various options to maximize the estate's value <u>for the benefit of investors</u>." [Doc. No. 48, p. 6, ¶14]. Notably, this excludes non-investor creditors like TMG. However, this might explain why the Receiver has chosen to waste estate resources frivolously defending TMG's state-court litigation against SWM, in which the forty-five day period in which to respond to the Complaint expired <u>before</u> initiation of this action and where there is no defense to TMG's claim.[4]  The Receiver is now seeking thousands of dollars for this activity. (Exhibit H, attached hereto). TMG submits the Receiver should not be so compensated.

15.

Given the Receiver's stated preference to maximize value for the "investors," in breach of his fiduciary duty to <u>all</u> creditors, and since the "investor victims" were Mr. Alleca's private high net worth investors who chose to place their own funds at risk in the "Alleca Funds," TMG submits it would equitable and

---

[4] TMG is also preparing a motion for relief from the current stay, in order to permit the state court to enter a default judgment for $1,000,000 against SWM.

in the best interest of the respective estates for the Receiver to only recover his fees, if any, from the "illegitimate" side of the business. Given the statements made in the Second Interim Report, the Receiver appears to be optimistic that he can recover substantial assets regarding the "Alleca Funds" – if he is entitled to fees, let him recover therefrom. Meanwhile, creditors of the "legitimate" business of SWM will be permitted to recover from those assets. With respect to the instant motion, the "legitimate" part of the estate should not pay for the Receiver's efforts to recover assets singularly "for the benefit of investors."

WHEREFORE, TMG prays that this Court:

(a) Disallow the Receiver's application for compensation as prayed for herein; and

(b) Grant such other and further relief as the Court deems to be just and proper.

This 29th day of March, 2013.

**MEROLLA & GOLD, LLP**

/s/   A. Todd Merolla
A. Todd Merolla
Georgia Bar No. 502570
Attorneys for The Meyers Group, Inc.

2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339
770-984-2300 (o)
770-984-0098 (f)
atm@merollagold.com

11

## **L.R. 7.1.D CERTIFICATE**

The undersigned hereby certifies that the foregoing has been formatted in Times New Roman font, 14-point type, which complies with the font size and point requirements of Local Rule 5.1.B.

This 29th day of March, 2013.

                                              /s/   A. Todd Merolla
                                              A. Todd Merolla

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVSION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | Civil Action No. 1:12-CV-3261-WSD |
| v. | : : | |
| ANGELO A. ALLECA, SUMMIT WEALTH MANAGEMENT, INC., SUMMIT INVESTMENT FUND, LP, ASSET DIVERSIFICATION FUND, LP, and PRIVATE CREDIT OPPORTUNITIES FUND, LP. | : : : : : | |
| Defendants. | : : : | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the within and foregoing **OBJECTION TO RECEIVER'S APPLICATION FOR COMPENSATION** was served upon all parties or their counsel of record by electronic means, through the United States District for the Northern District of Georgia CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

This 29th day of March, 2013.

      /s/    A. Todd Merolla
A. Todd Merolla

2018 Powers Ferry Road, Suite 800
Atlanta, Georgia 30339