UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) Plaintiff, ) ) ) v. ) ) ) ANGELO A. ALLECA, SUMMIT ) WEALTH MANAGEMENT, INC., ) SUMMIT INVESTMENT FUND, LP, ) ASSET CLASS DIVERSIFICATION ) FUND, LP, and PRIVATE CREDIT ) OPPORTUNITIES FUND, LLC, ) ) Defendants. ) ) | CIVIL ACTION FILE NO. 1:12-CV-3261-WSD |

RECEIVER'S THIRD INTERIM REPORT

Robert D. Terry, the Receiver appointed by Order of this Court dated September 21, 2012, files this Third Interim Report to describe the progress of the receivership and significant events since the previous report.

**Procedural and Factual Background**

1.     On September 18, 2012, the United States Securities and Exchange Commission ("SEC") filed an application for an injunction and other equitable relief, alleging that Angelo Alleca ("Alleca"), Summit Wealth Management, Inc.

("Summit") and three investment funds that had been created by Alleca (the "Alleca Funds") violated and were likely to continue to violate Sections 17(a)(1)-(3) of the Securities Act of 1933, Section 10 of the Securities Exchange Act of 1934, and Sections 206(1),(2) and (4) of the Investment Advisers Act of 1940.

2. On September 19, 2012, this Court granted the SEC's application and entered an Order freezing assets and granting other relief.

3. On September 21, 2012, the SEC sought the appointment of a receiver for Summit and the Alleca Funds. The Court appointed Robert D. Terry, of Page Perry, LLC, as Receiver.

4. On November 21. 2012, the Court modified the September 21 Order through by the entry of the Proposed Modified Order Appointing Receiver.

## Additional Assets

5. In April, 2013, the Receiver learned that Private Credit Opportunities Fund, one of the receivership entities, held a custodial account at Huntington National Bank.  In addition to holding several promissory notes payable to the Fund, there were funds of approximately $32,000 in the account. After investigation, the Receiver has determined that the notes were either forged or are otherwise of no value.  However, the Receiver has collected the cash reserves from Huntington.

6.     Earlier reports have discussed the "Studio Note," a promissory note payable to Summit that arose from the sale by Summit of certain assets to an investment adviser in Chicago. Angelo Alleca had assigned the note to a third party as partial satisfaction of a debt incurred by Landmark Investment Company, that was assumed by Summit.[1] The Receiver contested the validity of the assumption, and two payments under the Studio Note were, at the Receiver's request, paid into the Receiver's escrow account.  The Receiver and the assignee of the Studio Note, after negotiations, agreed that Summit would receive $273,975 of the remaining balance of the note, including $81,250 of the funds held in the escrow account.  The Receiver has filed a Motion for Approval of Settlement Involving Disputed Assets (Docket No. 66) with the Court.

6.     After an extensive review of bank transactions in the accounts described in previous reports, the Receiver has determined that it is unlikely that additional assets exist that can be recovered without legal action. It does appear that several possible claims exist for transfers made by the receivership entities for which no consideration appears to have been received.

---

[1] Summit had received a $600,000 benefit from the Landmark loan proceeds through the reduction of another debt owed by it to a third party.

7.      In addition, the Receiver has continued to investigate, through both subpoena and informal means, other possible claims against third parties. Prior to bringing any such claim, however, a careful cost-benefit analysis will be made and leave of Court may be sought prior to the commencement of any such action.

### Detroit Memorial Partners

8.      As reported previously, in addition to the Alleca Funds, many Summit clients invested in an entity called Detroit Memorial Partners, LLC, that was formed in Michigan in late 2007 for the purpose of holding an equity interest in another entity, Midwest Memorial Group, LLC, ("Midwest"). Midwest, in turn, was created to own and operate 28 cemeteries being sold by a Michigan state receivership. The individual who remains the putative manager of Detroit Memorial Partners, Mark Morrow is a former business associate of Mr. Alleca's.

9.      After determining that approximately $7,150,000 of funds from Private Credit Opportunities Fund, LLC, one of the receivership entities, were transferred to Detroit Memorial Partners, without any apparent justification or consideration, the Receiver sought and obtained from the Court the authority to secure counsel to pursue such claim on a contingent fee basis.

10. Detroit Memorial Partners' apparent lone significant asset is its 49% interest, subject to a "waterfall" distribution mechanism[2], in Midwest. Midwest, in turn, has two asset categories: 1) 28 cemeteries in Michigan that it owns and operates; and 2) its claim against various entities, including a Citigroup affiliate, for damages allegedly arising from their roles in connection with a loss of $68,000,000 of cemetery trust funds that occurred under a prior owner. While the precise valuation of these assets is unknown, the Receiver believes they are of substantial, albeit illiquid, value.

11. Detroit Memorial Partners has substantial assets and also substantial claims against those assets. Investors purchasing Detroit Memorial Partner notes through Summit have filed claims with the Receiver totaling over $19,000,000, a sum that primarily consists of principal investment amounts.[3] There may be other claims of this type that could be asserted directly against Detroit Memorial Partners in the future. Private Credit Opportunities Fund has the aforementioned claim for approximately $7,150,000. Individuals owning purported equity interests in

---

[2] Under the Midwest waterfall distribution procedures, the 51% owner will receive a return of all of its capital prior to any return of capital to Detroit Memorial Partners. After both owners have received a full return of their capital, the 51% owner will receive a preferential return on its capital contribution, followed by a preferential return to Detroit Memorial Partners on the latter's capital contribution. Only after both owners receive a full return of their capital plus preferential returns would any remaining distributions be made concurrently on a 51/49 basis.

[3] These claimants also report having received distributions, primarily denominated as interest, of approximately $5,000,000. Other distributions to investors, in an as yet undetermined amount, were also believed to have been made.

Detroit Memorial Partners have asserted claims exceeding $3,200,000.  In all likelihood, this list of claims is not exhaustive.

12. In late May, 2013, the Securities and Exchange Commission (the "SEC") filed a lawsuit against Detroit Memorial Partners and its manager, Mr. Morrow, alleging securities fraud in the sale of the notes to the Summit-customer noteholders.  As a remedy, the SEC is seeking a court order requiring Detroit Memorial Partners to disgorge its "ill-gotten gains or unjust enrichment with prejudgment interest."  An answer is due to be filed in early August, 2013.

13. Because of the SEC action against Detroit Memorial Partners and other events that have recently occurred regarding the Midwest Memorial Group lawsuit mentioned above, including the apparent increased possibility of a substantial settlement, the Receiver has deferred filing a lawsuit against Detroit Memorial Partners, believing that there is a realistic possibility that any recovery that might be obtained by pursuing that action might also be obtained without it, and therefore without incurring attorneys fees as a charge against such a recovery.  The Receiver is continuing to engage the appropriate parties on a day-to-day basis to monitor these developments, and will take the actions appropriate to the best interests of the receivership estate at the appropriate time.

**Insurance**

14. The Receiver has filed a policy limits claim against Summit's theft insurance policy. The carrier has asserted that the policy is void, and counsel for the Receiver is currently engaged in negotiations relative to the policy.

15. The Receiver has also notified the carrier of Summit's error and omissions policy of several demands for coverage and other potential claims. Counsel for the Receiver has also entered into discussions with counsel for the carrier regarding a dispute over the policy's coverage limits.

**Claims**

16. As noted earlier, the Receiver has received claims forms from former clients, trade claimants and others totaling over $48,000,000.

17. To date, the Receiver has collected 469 investor claims, totaling approximately $44,000,000. The amounts of claims related to each of the Alleca Funds and to Detroit Memorial Partners submitted to date are:

| | |
|---|---|
| Asset Class Diversification Fund, LP | $ 6,611,083 (57) |
| Private Credit Opportunities Fund, LLC | $ 11,045,944 (213) |
| Summit Investment Fund, LP | $ 2,860,690 (12) |
| Detroit Memorial Partners, LLC | $ 19,234,117 (175) |

In addition, three claims, totaling $684,000, have been received for investments in the "Summit Long Short Fund," and six claims, totaling $346,000, were received for investments in National Advisory Services, Inc., Summit corporate parent. The previously mentioned Detroit Memorial Partners equity investor claims comprise the remaining $3,274,440 of investor claims.

18. While most of these claims represent principal investment amounts, some claimants have also included amounts that had been reflected on statements as earnings on their investments. Additionally, some investors received distributions reflecting purported earnings from their investments. Some claims reflect those returns, while others do not.

19. In addition to investment-based claims, there are approximately 88 claims reflecting amounts dues arising primarily from debt obligations of Summit and trade payables. These claims total $4,276,300.

20. Other than to attempt to obtain clarifying information when confusing or inconsistent claims are submitted, the Receiver has not yet taken any steps to verify claims other than those that correspond to customer account statements the receiver has been able to obtain. Until such time as the estate has been able to recover funds that would enable a significant distribution to be made to claimants,

the Receiver does not believe it to be in the best interests of the estate to use resources for that purpose. Future recoveries will dictate those steps.

## Other Matters

21. The Receiver and his counsel are continuing to investigate, through subpoenaed documents and otherwise, possible claims against an advisor who left the firm approximately ten days after the Receivership began, joining a firm with whom Summit and Mr. Alleca had been negotiating for the sale of his accounts immediately prior to the Receivership's creation, along with other possible third party claims.

22. The Receiver will file another report covering the third quarter of 2013 in October, 2013, unless circumstances or events occur that warrant an earlier report.

Respectfully submitted this 26th day of July, 2013.

s/ Robert D. Terry
Georgia Bar No. 702606
Receiver

PAGE PERRY, LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, GA 30338

770-673-0047
770-673-0120 (fax)