IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 1:12-CV-3261-WSD |
| ANGELO A. ALLECA, SUMMIT WEALTH MANAGEMENT, INC., SUMMIT INVESTMENT FUND, LP, ASSET DIVERSIFICATION FUND, LP, and PRIVATE CREDIT OPPORTUNITIES FUND, LLC | |
| Defendants. | |

## Receiver's Sixth Interim Report

Robert D. Terry, the Receiver appointed by Order of this Court dated September 21, 2012, files this Sixth Interim Report to describe the current status of the Receivership, significant events since the previous report and a consideration of prospective events.

**Procedural and Factual Background**

On September 18, 2012, the United States Securities and Exchange Commission ("SEC") filed an application for an injunction and other equitable relief, alleging that Angelo Alleca ("Alleca"), Summit Wealth Management, Inc. ("Summit") and three investment funds that had been created by Alleca (the "Alleca Funds") violated and were likely to continue to violate Sections 17(a)(1)-(3) of the Securities Act of 1933, Section 10 of the Securities Exchange Act of 1934, and Sections 206(1),(2) and (4) of the Investment Advisers Act of 1940.

On September 19, 2012, this Court granted the SEC's application and entered an Order freezing assets and granting other relief. On September 21, 2012, the SEC sought the appointment of a receiver for Summit and the Alleca Funds. The Court appointed the undersigned Receiver. On November 21, 2012, the Court modified the September 21 Order through by the entry of the Proposed Modified Order Appointing Receiver.

As reported in several previous reports, the Receiver's focus is currently on identifying claims that may be asserted by the estate and attempting to locate assets and claims through the tracing of funds. Although several potential legal claims and sources of funds are being contemplated by the Receiver, the Receiver still believes there will likely be

2

only two significant possible sources of assets: 1) insurance proceeds from policies covering employee liability for losses incurred by investors; and 2) the receivership estate's claim against Detroit Memorial Partners, LLC ("DMP") for funds contributed to it by two of its funds. These claims are discussed in more detail below.

The current cash balance in the Receivership account is $299,757.46. The current value of all claims, subject to disallowance, is $48,483,206.55.

**Insurance Claim**

As previously reported, on the date the Receiver was appointed Summit had in force an Asset Management Protector Policy of Insurance (the "Policy") issued by Federal Insurance Company ("Federal"). The Policy, in general terms, provides for reimbursement of defense costs and indemnification of liability for certain defined claims arising from covered errors in the rendering of professional advisory services. The stated limit of liability under the Policy is $3,000,000. Federal, however, notified the Receiver of its position that the Policy was procured by fraud and is therefore void, that if the policy is not void that any claims that could be asserted by the Receiver are excluded or otherwise not covered, and that two-thirds of the limit, or $2,000,000, are foreclosed by false warranties of Summit officers or other acts of fraud or misrepresentation. The Policy is an

eroding policy, which means the amount available to pay losses decreases by each dollar that is paid in defense costs.

The Receiver does not concede the validity of the Insurer's claimed defenses. Nevertheless, in mutual recognition of the existence of a bona fide dispute, the Receiver and the Insurer have, after negotiations, reached an agreement in principle to resolve the dispute, which agreement is subject to and conditioned upon Court approval.  Counsel for the Receiver and for Federal are currently drafting, negotiating, and discussing the proposed settlement agreement and a motion for approval of the settlement, which they anticipate will be completed and filed with the Court on or before October 31, 2014.

**Detroit Memorial Partners**

As noted in previous reports, many of the transactions and other facts relating to this matter are entangled with the financial dealings of DMP, which is a minority owner of Midwest Memorial Group ("Midwest"), which in turn owns and operates 27 cemeteries in the state of Michigan.

The Securities and Exchange Commission filed an action last year (Civil Action No. 1:13-cv-1817-WSD )(the "SEC DMP Case"), alleging that DMP and its managing member, Mark Morrow, had committed securities

fraud in connection in the sale of the promissory notes sold through Summit and seeking remedies for the benefit of the investors in those notes.

Midwest settled a lawsuit (unrelated to this matter or the SEC DMP Case) last year which resulted in $7,776,363 being received by DMP as its share of those settlement funds.  By Order of the Court, in the SEC DMP Case, those funds were placed in escrow and frozen and a receiver, Jason S. Alloy, Esq. (the "DMP Receiver"), was appointed for DMP. DMP may also receive additional assets from which it could pay its creditors, including the Summit Receivership estate.

The Receiver's analysis indicates that $7,397,635 of funds that investors contributed to Private Credit Opportunities Fund, LLC ("PCOF"), one of the entities under the Receivership, were transferred in directly to accounts owned by DMP.  In addition, bank records show that two transfers totaling $545,000 were made from Asset Class Diversification Fund ("ACDF") to DMP.  The DMP Receiver has filed reports essentially agreeing with those findings.  In addition, the DMP Receiver has identified substantial transfers of funds from DMP to accounts owned by other Summit-related entities. These transfers between, among and for the benefit of DMP and various other Summit-related entities illustrate vividly the tangled nature of the scheme.

At an appropriate time, the Receiver will present to the Court his proposal regarding the evaluation and resolution of claims that may exist against the Summit entities, including those claims which exist between the Summit entities and DMP. When the DMP Receiver has completed his claims process, the undersigned Receiver expects to communicate with the DMP Receiver so that the nature and net amount of all of the claims involving both entities may be determined, and the manner in which the those claims as well competing claims might be appropriately and equitably resolved in the most efficient manner possible.

**Other Potential Claims by the Receiver**

The Receiver continues to evaluate the possibility of asserting various claims against third parties. Among other considerations with respect to each claim are the size of the potential recover, the cost to the Estate to pursue the claims, the merits of the claim and any potential defenses, and any difficulty anticipated in recovering any judgment that might be obtained.

At this time, the Receiver has been unable to identify any claims against individuals who may have invested in one or more of the Summit-related funds and received an amount in excess of their aggregate

investments in those funds. However, the Receiver has continued to obtain and evaluate information to determine whether any such viable claims exist.

The Receiver is also continuing to evaluate whether it is advisable to assert a claim against Alexandria Capital to recover past due payments under a promissory note. The current amount the Receiver anticipates recovering from said claim is marginal compared to the costs of asserting the claim. In addition, Alexandria Capital has filed with the Receiver a claim arising from a separate transaction for an amount which is similar equal to the anticipated payments under the note, which might constitute a setoff. Further, the claim is complicated by the existence of a dubious assignment of the right to receive payment from Summit to Carrie Mistina, Summit's former Chief Financial Officer. Ms. Mistina has filed a motion with the Court seeking to intervene in the present case for the purpose of seeking relief from the stay provisions of the Modified Receivership Order for the purpose of attempting to collect the amounts due to Summit from Alexandria Capital. The Receiver has filed a response to Ms. Mistina's motion in which he does not oppose Ms. Mistina's request to intervene, but does oppose her request for relief from the stay. In that response, the Receiver set forth the basic facts that support the finding that the assignment to Mistina constitutes a fraudulent conveyance that must be set aside. Rather than engage in

separate litigation regarding these claims, the Receiver believes they can be most efficiently resolved as part of the claims adjudication process.

Although the Receiver has not conclusively determined that he may not propose to pursue any claims in the future other than those discussed in this report, particularly with respect to additional information he may receive in the future, no such litigation is currently contemplated based upon the information which he has now.

### Claims of Investors Outside the Receivership

On May 6, 2014, a civil complaint (the "Class Action") was filed in this Court by former Summit Clients, as class representatives, against TD Ameritrade Inc. and Charles Schwab & Co., Inc. ("Class Defendants"). The case number for the Class Action is 1:14-CV-01361-WSD.  The Class Action alleges, generally, that Alleca's fraud "could only have been achieved – through [Class] Defendants' reckless or intentional lack of oversight and due diligence and through their eschewal of compliance with the duties they owed Plaintiffs and the Class." As of the date of this report, the Class Defendants have filed motions to dismiss the case, which motions are pending with the Court.

**The "Studio Note"**

As reported previously, the Court previously approved a settlement between the Receiver and Beverly Hills Corporation Maintenance and Preservation Fund ("Beverly Hills") relating to a promissory note from Studio Investment Management, LLC ("Studio") which Angelo Alleca, president of Summit Wealth Management, Inc., had caused to be assigned to Beverly Hills. The Receiver had contested the validity of that assignment, and had reached a settlement regarding the disputed amount.

On August 13, 2013, Studio elected to prepay in full the remaining two payments due under the settlement to be paid to the Receiver. Those payments totaled $162,500. From those proceeds, the Receiver has paid $66,137.50 to Beverly Hills Corporation Maintenance and Preservation Fund, as required by the settlement, resulting in a net receipt by the Receivership estate of $96,362.50 from those payments.

**Angelo Alleca**

Several investors have asked for information relating to any potential criminal prosecution of Angelo Alleca. In connection with an active criminal investigation relating to the activities of Mr. Alleca, and with the approval of the United States Attorney's office, the Receiver can report that he has provided to the United States Attorney certain information relating to the

9

facts which gave rise to the institution of the receivership, including amounts invested by Summit investors in the various Summit-related entities. Representatives of the Federal Bureau of Investigation may be contacting some Summit customers relating to their losses. The Receiver has no further information to report on this topic at this time.

Respectfully submitted this 30th day of September, 2014.

/s/ Robert D. Terry
Robert D. Terry
*Receiver*

PARKER MACINTYRE
2987 Clairmont Road
Suite 200
Atlanta, GA 30320
(404) 490-4060
(404) 490-4058 – facsimile
bterry@parkmac.com

## **CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notice of electronic filing to counsel of record.

Respectfully submitted this 30th day of September, 2014.

/s/ Robert D. Terry
Robert D. Terry
Georgia Bar No. 702606
Receiver

PARKER MACINTYRE
2987 Clairmont Road
Suite 200
Atlanta, GA 30320
(404) 490-4060
(404) 490-4058 – facsimile
bterry@parkmac.com