IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

ANGELO A. ALLECA, SUMMIT
WEALTH MANAGEMENT, INC.,
SUMMIT INVESTMENT FUND,
LP, ASSET DIVERSIFICATION
FUND, LP, and PRIVATE CREDIT
OPPORTUNITIES FUND, LLC,

        Defendants.

1:12-cv-3261-WSD

## OPINION AND ORDER

This matter is before the Court on Intervenor Carrie Mistina's ("Mistina") Motion to Intervene [91] ("Motion to Intervene") and Motion to Clarify and/or Modify Order Appointing Receiver [91-1] ("Motion to Clarify").  Also before the Court is Robert D. Terry's ("Receiver") Limited Consent to Motion to Intervene and Opposition to Proposed Intervenor's Motion to Clarify and/or Modify Order Appointing Receiver [95] ("Receiver Response") and the Securities and Exchange Commission's ("SEC") Limited Consent to Carrie Mistina's Motion to Intervene and Opposition to Motion for Relief from Stay [96] ("SEC Response") and Motion

for Leave to File a Sur-Reply in Opposition to Motion for Relief from Stay [99] ("Motion for Leave").

**I.   BACKGROUND**

This action involves alleged violations of securities laws by Defendants, resulting in significant investment losses to numerous investors. On September 19, 2012, the Court entered a permanent injunction [7] against Defendants enjoining them from violating certain securities laws, freezing Defendants' assets, and requiring an accounting of assets. On September 21, 2012, the Court appointed [9] ("Receivership Order") Robert D. Terry as the Receiver for the estates of Defendants Summit Wealth Management, Inc. ("Summit"), Summit Investment Fund LP, Asset Class Diversification Fund, LP, and Private Credit Opportunities Fund, LLC (the "Receivership Entities"). On November 21, 2012, the Court entered an order [27] ("Modified Receivership Order") authorizing the Receiver to recover and secure the assets of the Receivership Entities.

A.   <u>The Virginia Action</u>

On June 7, 2013, Mistina filed a civil action (the "Virginia Action") against Alexandria Capital, LLC ("Alexandria") in the United States District Court for the

Eastern District of Virginia (the "Virginia Court").[1]  In the Virginia Action, Mistina alleges that, in May 2006, she became Summit's Chief Financial Officer ("CFO").  (Virginia Complaint ¶ 7).  Mistina claims that, on August 1, 2011, Summit entered into an asset purchase agreement (the "Agreement") with Alexandria.  (Id. ¶ 8).  The Agreement provided for Summit to transfer to Alexandria certain investment accounts that had been managed by Richard and Jill Potter (the "Potter Accounts").  (Id.).  In return, Summit would receive, among other things, four payments of one-third of the annual fees generated by the Potter Accounts (the "Annual Payments").  (Id.).  These payments would be made to Summit during the period October 1, 2012, through October 1, 2015.  (Id.).  Based on the fees previously generated by the Potter Accounts, the estimated Annual Payments to be made was projected to be between $130,000 and $210,000.  (Id. ¶ 10).

Mistina alleges that, on August 19, 2012, Summit's President and Chief Executive Officer, Angelo Alleca ("Alleca"), asked Mistina for $30,000 of her personal funds to pay the premium on Summit's errors and omissions insurance policy.  (Id. ¶ 11).  In exchange, Alleca offered to assign the Annual Payments to

---

[1]  Case No. 1:13-cv-00692-CMH-TRJ.  A copy of Mistina's Complaint in the Virginia Action (the "Virginia Complaint") is attached as Exhibit 1 to her Motion to Clarify.

3

Mistina.  (Id. ¶ 12).  On August, 21, 2012, Summit executed an agreement, assigning to Mistina Summit's interest in the Annual Payments.  (Id. ¶ 13).  On August 22, 2012, Alexandria confirmed the agreement to make the Annual Payments to Mistina by check.  (Id. ¶ 14).

Mistina alleges that the first of the Annual Payments was due on October 1, 2012.  (Id. ¶ 15).  Mistina claims that Alexandria did not make the first Annual Payment, and refuses to acknowledge Mistina's right to the Annual Payments.  (Id. ¶¶ 15-16).

On July 1, 2013, Alexandria filed, in the Virginia Action, its Motion to Stay Proceedings, arguing that the Receiver had determined that the Annual Payments were assets of the "Receivership Estate" and the Virginia Action must be stayed pursuant to the Modified Receivership Order.  (Virginia Action at [5]).  On July 24, 2013, the Virginia Court entered an order staying the Virginia Action pending a resolution of Mistina's claims by the Receiver, or entry of an order of this Court lifting the stay.  (Virginia Action at [11]).

B.  Motion to Intervene

On May 15, 2014, Mistina filed her Motion to Intervene and Motion to Clarify.  In her Motion to Clarify, she asserts the same factual allegations contained in the Virginia Complaint, and argues that because she used her personal

4

funds to purchase the investment accounts from Summit, her action was not taken "in her capacity" as CFO, and therefore the Modified Receivership Order does not apply.  (Motion to Clarify at 6).

The Receiver and the SEC do not object to Mistina's Motion to Intervene. They do oppose the Motion to Clarify.  The Receiver argues that the Motion to Clarify should be denied because: (i) the assignment to Mistina was a fraudulent transfer; and (2) even if it was not a fraudulent transfer, allowing the Virginia Action to proceed would interfere with the orderly administration of the Receivership.  (Receiver Response at 4-11).  The SEC argues that: (i) Mistina's actions were in her capacity as Summit's CFO; (ii) Mistina's claim "involves" Summit within the meaning of the Modified Receivership Order; and (iii) Mistina's claim involves receivership property.  (SEC Response at 6-10).

In Mistina's Reply [98] in support of her Motion to Clarify, she argues that because the SEC and the Receiver assert that her claim arises from a fraudulent conveyance, an evidentiary hearing is required to adjudicate her claim.

On June 25, 2014, the SEC filed its Motion for Leave to request permission to file a Sur-Reply to the Motion to Clarify to oppose the evidentiary hearing Mistina first requested in her Reply.

5

## II. DISCUSSION

### A. Motion to Intervene

The SEC and the Receiver do not oppose Mistina's Motion to Intervene, and the Court thus grants the motion.

### B. Motion to Clarify

The Court appointed the Receiver in this action to prevent the dissipation of the Receivership Estate's assets. The Receiver was granted the exclusive right and authority to pursue claims on behalf of the Receivership Estate. (Receivership Order ¶ 1(E)).

The Receivership Order states:

> [E]xcept by leave of this Court, all creditors and other persons seeking money damages or other relief from the Receiver Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed and restrained from doing anything to interfere with the possession, recovery or management by the Receiver of the property and assets owned, controlled, belonging to, or in the possession of the Receiver Estate, or to interfere with the Receiver in any manner during the pendency of this proceeding.

(Receivership Order ¶ 17).

The Court later, at the Receiver's request, and to avoid the dissipation of Receiver Estate assets in litigation, modified the Receivership Order to provide:

> As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:
>
> All civil legal proceedings of any nature . . . involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").
>
> The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.
>
> All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.

(Modified Receivership Order ¶ 16).

Mistina does not challenge the Court's authority to impose the stay, but asserts it does not and should not apply to the Virginia Action. (See Motion to Modify at 6). The Court disagrees. Summit was entitled to the Annual Payments until it assigned them to Mistina. The Receiver contends that this assignment was

7

a fraudulent conveyance and that, therefore, the Annual Payments are Receivership Property,[2] and the Virginia Action necessarily "involves" Summit, one of the Receivership Defendants. The term "involving" in the Modified Receivership Order is not limited to mean actions brought by or against a Receivership Defendant. By its terms, "involving" a Receiver Defendant includes a lawsuit that necessarily impacts the potential rights or property of the Receivership Defendant and, through it, the Receivership Estate. Put another way, the claim asserted by Mistina is squarely within the Receiver's jurisdiction.

The Court does not decide whether the assignment by the operator of a Ponzi scheme of a payment stream valued at $130,000 to $210,000, to an insider for a payment of $30,000, is fraudulent within the meaning of Georgia's Uniform

---

[2] (See Sixth Interim Status Report [101] at 7-8). The Receiver continues his practical evaluation regarding whether it is in the best interests of the Receivership Estate to assert a claim against Alexandria to recover the Annual Payments. On March 28, 2013, the Receiver preliminarily concluded that the assignment to Mistina of the Annual Payments was a fraudulent conveyance, and advised Alexandria and Mistina of that conclusion. (See Second Interim Report [50] ¶ 40). If it was a fraudulent conveyance, the Receiver would be entitled to set aside the assignment, and the Annual Payments Mistina alleges are owed to her would be instead owed to the Receivership Estate, for the benefit of all creditors. See O.C.G.A. § 18-2-77 (allowing a creditor to avoid a fraudulent transfer).

Fraudulent Transfers Act (the "UFTA").[3] This is an issue to be resolved only if necessary with litigation between the Receiver and Mistina.

The Court instead concludes, despite Mistina's assertions to the contrary, that the Virginia Action falls within the scope of Paragraph 16 of the Modified Receivership Order because the Virginia Action involves a Receivership Defendant and its officers and also involves assets that the Receiver believes were fraudulent conveyed and, thus, involves claimed Receivership Property.[4]

---

[3] The Court notes that a transfer can be deemed fraudulent under the UFTA if the debtor made the transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor" or made the transfer without "receiving a reasonably equivalent value in exchange for the transfer" and the debtor was "engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." O.C.G.A. § 18-2-74(a). Mistina asserts that she provided the $30,000 payment to Summit to allow Summit to pay the premium on its errors and omissions insurance policy. (Motion to Clarify at 3). It appears, therefore, the payment was made to pay a prior or upcoming debt of Summit and there is a reasonable basis to believe the transfer was made with the intent to defraud creditors. See O.C.G.A. § 18-2-74(a)(1); cf. Perkins v. Haines, 661 F.3d 623, 626 (11th Cir. 2011) (Finding, under the Bankruptcy Code, that with "respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud . . . .").

[4] In her Response [100] to the SEC's Motion for Leave, Mistina asserts, for the first time, that the Receiver has done nothing to recover the Annual Payments, and that his failure to expeditiously do so is depriving her of her due process rights should she be the one actually entitled to the payments. Mistina did not raise this argument in her Motion to Clarify, and the Receiver and SEC have thus not had an

(Modified Receiverhip Order ¶ 16(c)); cf. Alley v. U.S. Dep't of Health & Human Servs., 590 F.3d 1195, 1202 (11th Cir. 2009) (A district court is in the best position to interpret its own orders). The Court further concludes that Mistina has failed to provide a basis upon which the Court could conclude that she is entitled to relief from the Modified Receivership Order, or otherwise entitled to the Annual Payments. The Court notes further that allowing the Virginia Action to proceed could lead to inconsistent results regarding the Annual Payments, a possibility the Court suspects influenced, at least in part, the Virginia Court's decision to grant the consensual stay requested by Mistina and Alexandria in the Virginia Action "pending either a resolution of [Mistina's] claims by the [R]eceiver appointed by the [Court] or a ruling by the [Court] lifting its stay . . . ." (Virginia Action at [11]).[5]

---

opportunity to respond to this argument. It, therefore, is not properly before the Court at this time.

[5] Here, Mistina filed a claim against the Receivership Estate for $225,000 based upon the underlying transaction at issue in the Virginia Action. (See Receiver Response at 8). This further supports the Receiver's argument that the Virginia Action involves Summit, a Receivership Defendant. It also supports the decision of the Virginia Court in the Virginia Action, for this Court to resolve Mistina's claim to the Annual Payments in order to avoid potentially inconsistent results.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Intervenor Carrie Mistina's Motion to Intervene [91] is **GRANTED**.

**IT IS FURTHER ORDERED** that Intervenor Carrie Mistina's Motion to Clarify [91-1] is **DENIED**.

**IT IS FURTHER ORDERED** that the SEC's Motion for Leave [99] is **DENIED AS MOOT**.[6]

**SO ORDERED** this 5th day of March, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[6] The Court, having found that the Modified Receivership Order, by its terms, applies to the Virginia Action without reference to whether the assignment was fraudulent pursuant to the UFTA, concludes that no evidentiary hearing is necessary, and thus denies the SEC's Motion for Leave as moot.