# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>ANGELO A. ALLECA, SUMMIT WEALTH MANAGEMENT, INC., SUMMIT INVESTMENT FUND, LP, ASSET CLASS DIVERSIFICATION FUND, LP, and PRIVATE CREDIT OPPORTUNITIES FUND, LLC,<br><br>    Defendants. | 1:12-cv-3261-WSD |

## OPINION AND ORDER

This matter is before the Court on Receiver Robert D. Terry's ("Receiver") Motion to Approve Plan of Distribution [120], as amended [125] ("Distribution Plan"), Receiver's Motion for Special Distribution [129], and Claimant Alexandria Capital, LLC's ("Alexandria Capital") Objection to Receiver's Motion to Approve Plan of Distribution [127] ("Objection").

## I. BACKGROUND

### A. Defendants' Fraudulent Scheme

Plaintiff Securities and Exchange Commission (the "SEC") alleges that, in 2004, Defendant Angelo A. Alleca ("Alleca") formed Summit Investment Fund, LP ("SIF"), a private fund for which he solicited investments from clients of his investment advisory firm, Summit Wealth Management, Inc ("Summit Wealth Management"). (Compl. ¶ 2). Alleca misrepresented to investors that SIF operated as a "fund-of-funds" when, in fact, starting in 2006, he used the funds' assets to trade securities, incurring substantial losses. (Compl. ¶ 2).

To cover the losses, Alleca started at least two additional funds, Asset Class Diversification Fund, LP ("ACDF") and Private Credit Opportunities Fund, LLC ("PCOF"). (Compl. ¶ 3). He raised capital for the funds by selling interests in them to clients of Summit Wealth Management. (Compl. ¶ 3). Alleca used these proceeds to satisfy redemption requests made by SIF investors. (Compl. ¶ 5). ACDF and PCOF ultimately incurred losses. (Compl. ¶ 3).

Summit Wealth Management concealed the losses from its advisory clients, including by issuing false account statements to approximately 200 of its clients. (Compl. ¶¶ 4, 23). SIF, ACDF and PCOF (together, "Summit Funds") also used false account statements to conceal the losses from their investors. (Compl. ¶ 4).

2

Alleca exercised control over Summit Wealth Management and the Summit Funds (together, the "Receivership Entities"), and dissipated most of the $17 million invested in the funds. (Compl. ¶¶ 4, 6).

On September 18, 2012, the SEC filed its Complaint [1], asserting securities fraud claims against Alleca and the Receivership Entities (together, "Defendants"). The next day, the Court froze Defendants' assets and enjoined Defendants from violating the securities laws. ([7]). On September 21, 2012, the Court appointed Robert D. Terry as receiver for the estate of the Receivership Entities. ([9] at 2). On November 21, 2012, the Court modified its September 21, 2012, Order to stay all litigation against the Receiver and the Receivership Entities. ([27]).

On December 15, 2015, a grand jury in the Northern District of Georgia returned an Indictment charging Alleca with one count of conspiracy to commit mail and wire fraud, one count of conspiracy to commit wire fraud, one count of conspiracy to commit money laundering, six counts of mail fraud, and eight counts of wire fraud, all arising out of Alleca's alleged securities fraud. United States v. Angelo Alleca, No. 1:15-CR-458-LLM-AJB-1 (N.D. Ga. Dec. 15, 2015).[1] On May 26, 2016, Alleca pleaded guilty to one count of conspiracy to commit mail

---

[1] Some of the charges arose out of Alleca's involvement with entities other than the Receivership Entities.

and wire fraud, and one count of conspiracy to commit wire fraud. Id. The remaining counts were dismissed. Id. Alleca was sentenced to 96 months in prison and 3 years of supervised release. Id.

B. The Receiver's Distribution Plan

On June 6, 2017, the Receiver filed his Distribution Plan, proposing to distribute the receivership assets pursuant to the "rising tide" methodology. Under this allocation method:

> [T]he Receiver will deduct the amount of a Claimant's pre-receivership withdrawals *after* calculating the investor's pro rata share of any distribution. If the result is negative—meaning that the Claimant has already received pre-receivership withdrawals in excess of his or her calculated pro rata share of a distribution—that Claimant will not participate in that distribution, although he or she may participate in later distributions. This method preserves assets for those Claimants who have received nothing thus far and recognizes that some Claimants have already recovered a substantial percentage of their investment.

([120] at 18); see Commodity Futures Trading Comm'n v. Equity Fin. Grp., Inc., No. 04-cv-1512, 2005 WL 2143975, at *24 (D.N.J. Sept. 2, 2005) (discussing the rising tide methodology). "If approved, after taking into account any money received by investors prior to the Receivership, this distribution [plan] will represent a minimum recovery percentage among included Claimants of [14.5%]." ([120] at 14; [125] at 3; [125.1] at 1). On July 17, 2017, the Receiver filed minor amendments to his Distribution

4

Plan. ([125]).

On September 12, 2017, the Receiver filed his Motion for Special Distribution , proposing to distribute $34,736.25 to a claimant who was inadvertently omitted from the Distribution Plan. This additional distribution does not affect the amounts distributed to other claimants under the Distribution Plan.

The receivership has approximately $1,811,065 in cash, of which the Receiver seeks to distribute $1,394,736.25 to the claimants. ([120] at 14; [129] at 3). The Receiver intends to retain the remaining $416,328.75 "for the purposes of paying accrued but unpaid expenses of the receivership (including the expenses of the Receiver, his counsel and his accountants), to cover the cost of disposing of Receivership Assets, terminating the Receivership, and other administrative costs." ([120] at 14; [129] at 3).

  C. <u>Alexandria Capital's Objection to the Receiver's Distribution Plan</u>

Alexandria Capital is a registered investment advisor located in Washington D.C. ([128] at 1). In 2012, Alexandria Capital and Summit Wealth Management entered into negotiations for the sale of certain assets to Alexandria Capital. ([127] ¶ 2; [128] at 1-2). During these negotiations, Alleca asked Alexandria Capital's Chief Executive Officer ("CEO") for funds "to

5

alleviate cash-flow problems" at Summit Wealth Management. ([127] ¶ 3; [127] at 10; [128] at 3). In response to this request, on September 4, 2012, Alexandria Capital wired $100,000 to Summit Wealth Management. ([127] ¶ 4). "Alleca used the funds received from [Alexandria Capital] for the general operation of Summit [Wealth Management], or to further his fraudulent scheme that is the subject matter of this receivership, or both." ([128] at 3). Alexandria Capital was never repaid for the $100,000 transfer, and its proposed purchase of Summit Wealth Management's assets was never completed. ([127] ¶¶ 5-6).

On April 18, 2013, Alexandria Capital submitted its $100,000 claim to the Receiver. ([128] at 3). On June 8, 2017, the Receiver filed his Distribution Plan, proposing to "allow [Alexandria Capital's] entire claim in the amount of $100,000 and, pursuant to the rising tide calculations applied to all claimants, propos[ing] to pay [Alexandria Capital] $14,481.21 representing [14.5%] of the allowed claim." ([128] at 3-4).

On August 16, 2017, Alexandria Capital filed its Objection to the Distribution Plan, asserting that its $100,000 claim should be paid in full before distributions are made to other claimants. Alexandria Capital argues that its claim should receive priority because it is not a "client" or "trade

creditor" of Defendants, and it "received nothing of value in return for providing the funds to Defendants."  ([127] ¶¶ 9-11).  Alexandria Capital's objection was filed by its CEO and Managing Partner, Augustine Hong, who apparently is not an attorney.  See http://alexandriacapital.com/augustine-hong/; https://www.gabar.org/membership /membersearch.cfm (no results returned by search for "Augustine Hong").

D. The September 19, 2017, Hearing

On September 19, 2017, the Court held a hearing on the Receiver's Distribution Plan, his Motion for Special Distribution, and Alexandria Capital's Objection to the Distribution Plan.  Only the Receiver and his counsel attended the hearing.  The Receiver told the Court that his proposed Distribution Plan should be modified to ensure that claimants are treated consistently.  (Plan of Distribution Hearing Transcript (Sept. 19, 2017) ("Tr.") at 3).  Specifically, the Receiver seeks to cancel his proposed distributions to Claimants 470 and 485 (together, the "Two Claimants").[2]

The current Distribution Plan proposes distributing $123,829.67 to Claimant 470 and $28,722.08 to Claimant 485.  ([125.1] at 6).  Both claims

---

[2] Claimant 485 is the Bank of North Georgia.  (Tr. at 8).  The Receiver has not disclosed the identity of Claimant 470 but it appears to be The Meyers Group, Inc. (See [120] at 25; Tr. at 7 (referring to Claimant 470 generally as an "entity")).

are based on promissory notes under which Defendants agreed to pay the Two Claimants a certain sum of money. (Tr. at 3). Before the Receiver was appointed, Defendants paid some, but not all, of the money owed to the Two Claimants under the promissory notes. The Distribution Plan reduces the value of the Two Claimants' "allowed claims"—that is, the amount from which they are entitled to a 14.5% recovery—by the amount of the partial payments they previously received. ([125.1] at 6). The Receiver argued at the hearing that, to conform to his treatment of other claimants, the partial payments should be deemed "pre-receivership withdrawals" rather than amounts by which the "allowed claims" are reduced. The Receiver stated that, if the partial payments constitute pre-receivership withdrawals, the Two Claimants are not entitled to any distributions because they previously received more than 14.5% of the value of their promissory notes. (Tr. at 3-4, 7-8, 10). The Receiver asked the Court to approve the Distribution Plan except for the proposed distributions to the Two Claimants.

The Receiver provided further information about Claimant 470 to illustrate the basis of his request. He stated that, in 2010, Claimant 470 sold several brokerage accounts to Defendants for $1,221,582. Defendants agreed to pay this purchase price in three installments of $407,194.

Defendants made the first payment but defaulted on the remaining payments required under the promissory note. The Distribution Plan reduces Claimant 470's $1,221,582 claim by $407,194, the amount of the payment that Claimant 470 previously received from Defendants. This produces an allowed claim of $814,338, from which the Distribution Plan proposes to distribute at least $118,086, or 14.5%, to Claimant 470. (See [120] at 25; [125]).[3] The Receiver argued, at the hearing, that the allowed claim should be the full price of the promissory note, $1,221,582, and that the $407,194 payment previously received by Claimant 470 should be deemed a pre-receivership withdrawal. Because that prior payment ($407,194) exceeds 14.5% of the allowed claim ($1,221,582), the Receiver argued that Claimant 470 is not entitled to receive a distribution.

---

[3] Although the Receiver appears to state that Claimant 470's allowed claim is $814,338—which is $1,221,582 minus $407,194—the Receiver's proposed distribution table identifies $855,107.40 as the allowed claim, from which it proposes to distribute 14.5% to Claimant 470. (Compare [120] at 25 with [120.1] at 6; [125.1] at 6). The Receiver should explain this discrepancy in the motion he is required, by later portions of this Order, to file.

## II. DISCUSSION

### A. Legal Standard

"In equity receiverships resulting from SEC enforcement actions, district courts have very broad powers and wide discretion to fashion remedies and determine to whom and how the assets of the Receivership Estate will be distributed." SEC v. Homeland Commc'ns Corp., No. 07-cv-80802, 2010 WL 2035326, at *2 (S.D. Fla. May 24, 2010); see SEC v. Elliot, 953 F.2d 1560, 1566 (11th Cir. 1992) ("The district court has broad powers and wide discretion to determine relief in an equity receivership. This discretion derives from the inherent powers of an equity court to fashion relief." (citations omitted)); see also Bendall v. Lancer Mgmt. Grp., LLC, 523 F. App'x 554, 557 (11th Cir. 2013) ("Any action by a trial court in supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse." (citation and internal quotation marks omitted)). "A distribution plan that is supported by both the SEC and the receiver is entitled to deference from the Court." SEC v. Quan, No. 11-cv-723, 2015 WL 8328050, at *6 (D. Minn. Dec. 8, 2015), aff'd sub nom. SEC v. Quan, ___ F.3d ___, 2017 WL 3722453 (8th Cir. Aug. 30, 2017); see SEC v. Byers, 637 F. Supp. 2d 166, 175 (S.D.N.Y.

2009) (giving deference to a distribution plan proposed by the receiver and supported by the SEC).

"[N]o specific distribution scheme is mandated so long as the distribution is fair and equitable." Homeland, 2010 WL 2035326, at *2. "[W]hen victims seeking restitution occupy similar positions, a pro rata distribution is preferred." SEC v. Drucker, 318 F. Supp. 2d 1205, 1206 (N.D. Ga. 2004). "Thus, where a victim seeking preferential treatment cannot materially distinguish his situation from that of other victims, a pro rata distribution is recognized as the most equitable solution." Id. at 1207. "A 'rising tide' allocation, which the . . . Receiver proposes here, results in a pro rata distribution of available assets to victims." SEC v. Detroit Mem'l Partners, LLC, No. 1:13-cv-1817, 2016 WL 6595942, at *5 (N.D. Ga. Nov. 8, 2016); see SEC v. Par., No. 2:07-cv-00919, 2010 WL 5394736, at *3 (D.S.C. Feb. 10, 2010) (discussing "pro-rata payments based on the Rising Tide calculation").

    B.    Analysis

        1.    The Receiver's Rising Tide Proposal

The Receiver proposes to use the "rising tide" method of distributing assets. Neither the SEC nor any other person has objected to this distribution method. "The basic goal [of the rising tide allocation] is to equalize recovery for victims

regardless of whether the recovery comes before or after the commencement of the [receivership]." Michael L. Martinez, The Ebb of Rising-Tide Distributions in Ponzi Scheme Bankruptcies, 35 Am. Bankr. Inst. J. 16 (June 2016). "Rising tide appears to be the method most commonly used (and judicially approved) for apportioning receivership assets." S.E.C. v. Huber, 702 F.3d 903, 906 (7th Cir. 2012). This Court recently approved as "fair and equitable" the rising tide method of distribution in two equity receiverships resulting from SEC enforcement actions. See SEC v. Torchia, No. 1:15-cv-3904-WSD (N.D. Ga. Aug. 7, 2017); Detroit Mem'l, 2016 WL 6595942, at *11. Having reviewed the Receiver's Distribution Plan, the Court finds that the rising tide allocation constitutes a fair and equitable method of distributing receivership assets in this case.

2. Alexandria Capital's Objection

Alexandria Capital's Objection to the Receiver's Distribution Plan is overruled because it was filed by CEO Augustine Hong, a non-attorney. "A corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing *pro se*." Harrison v. Wahatoyas, L.L.C., 253 F.3d 552, 556 (10th Cir. 2001); see Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity, i.e., a trust, in a

court."); Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985) ("[A] corporation is an artificial entity that can act only through agents, cannot appear *pro se,* and must be represented by counsel. . . . [This] rule applies even where the person seeking to represent the corporation is its president and major stockholder."); see also LR 83.1(E)(2)(b)(I), NDGa.

Alexandria Capital's Objection also is overruled because it failed to attend the September 19, 2017, hearing, in violation of the Court's July 20, 2017, Order [126]. The Court, in its Order, stated that, "[i]f a claimant makes an objection to the Plan of Distribution, the claimant must be present at the Hearing to assert the claim." ([126] at 3). The Court warned claimants that their objections may be overruled if they were not asserted at the hearing. Alexandria Capital's failure to attend the hearing is fatal to its Objection.

Even if Alexandria Capital's Objection had been filed by an attorney and asserted at the September 19, 2017, hearing, it still would fail because Alexandria Capital has not shown its claim should be prioritized over other claimants. Alexandria Capital argues that its claim should receive priority because it is not a "client" or "trade creditor" of Defendants, and it "received nothing of value in return for providing the funds to Defendants." ([127] ¶¶ 9-11). These assertions fail to materially distinguish Alexandria Capital from other claimants.

For example, claimant Oasis Outsourcing III, Inc. ("Oasis"), like Alexandria Capital, provided approximately $100,000 to Summit Wealth Management "to allow Summit to meet its ongoing cash-flow obligations." ([128] at 5). These funds, like the funds supplied by Alexandria Capital, apparently were never repaid. Other claimants also extended credit to Alexandria Capital under similar circumstances, including "a company that provided technical support and services, several companies that entered into unfulfilled leasing agreements to lease office space for Summit's various branch offices, companies that leased equipment to Summit for its day-to-day operations, and a company that sold advisory accounts to Summit on the promise of future payment." ([128] at 5-6).

Alexandria Capital also occupies essentially the same position as Defendants' investors and clients whose funds were misused and who now seek repayment from the receivership. These claimants, like Alexandria Capital, provided funds to Defendants with the expectation that the funds would be used for legitimate business purposes and that they would be repaid or otherwise available for recovery. In each case, however, the funds were not repaid and apparently were used to further Alleca's fraudulent scheme, ultimately leading to the failure and insolvency of the Receivership Entities. "Since [Alexandria Capital] occupie[s] the same legal position as other creditors, equity would not permit them

14

a preference; for equality is equity." Elliott, 953 F.2d at 1570.

Alexandria Capital's claim is not entitled to priority over other claimants, and its Objection to the Distribution Plan is overruled.

### 3. The Two Claimants

At the September 19, 2017, hearing, the Receiver sought to modify the Distribution Plan to ensure consistency among the claimants. Specifically, the Receiver argued that, although the Distribution Plan proposes making distributions to the Two Claimants, neither Claimant should receive a distribution because they obtained pre-receivership withdrawals from Defendants of more than 14.5% of their promissory notes. The Receiver asked the Court to approve his Distribution Plan except for the proposed distributions to the Two Claimants, and to allow briefing on whether the Two Claimants are entitled to distributions from the receivership.

Having considered the Receiver's request and the record in this case, the Receiver's Motion to Approve Plan of Distribution is granted except that distributions shall not be made to the Two Claimants.[4] The Receiver shall file, on or before October 5, 2017, his motion to modify the Distribution Plan's proposed

---

[4] The Receiver's unopposed Motion for Special Distribution, which seeks to distribute funds to a claimant who was inadvertently omitted from the Distribution Plan, also is granted.

distributions to the Two Claimants. The Two Claimants shall file their response on or before October 26, 2017. The Receiver shall file his reply on or before November 2, 2017. The Receiver shall ensure that the Two Claimants receive a copy of this Order on or before September 28, 2017. The Receiver also shall ensure that, on or before October 8, 2017, the Two Claimants receive a copy of the Receiver's motion to modify the Distribution Plan's proposed distributions to the Two Claimants. If the Two Claimants fail to respond to the Receiver's motion on or before October 26, 2017, the Court may determine not to make a distribution to the Two Claimants.

The Court's partial approval of the Distribution Plan allows claimants other than the Two Claimants to receive distributions without further delay. Making a distribution to them now in the amounts stated in the Distribution Plan [125.1] does not prejudice the claimants because they will receive the 14.5% recovery proposed in the Distribution Plan to which they did not object.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Receiver Robert D. Terry's Motion to Approve Plan of Distribution [120], as amended [125], is **GRANTED** except that

distributions shall not be made to Claimants 470 and 485 (the "Two Claimants") identified in the Receiver's Distribution Plan ([125.1] at 6).

**IT IS FURTHER ORDERED** that Claimant Alexandria Capital, LLC's Objection to Receiver's Motion to Approve Plan of Distribution [127] is **OVERRULED**.

**IT IS FURTHER ORDERED** that Receiver Robert D. Terry's Motion for Special Distribution [129] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Receiver shall file, on or before October 5, 2017, his motion to modify his Distribution Plan's [125.1] proposed distributions to the Two Claimants. The Two Claimants shall file their response on or before October 26, 2017. The Receiver shall file his reply on or before November 2, 2017. The Receiver shall ensure that the Two Claimants receive a copy of this Order on or before September 28, 2017. The Receiver also shall ensure that, on or before October 8, 2017, the Two Claimants receive a copy of the Receiver's motion to modify the Distribution Plan's proposed distributions to the Two Claimants. If the Two Claimants fail to respond to the Receiver's motion on or before October 26, 2017, the Court may determine not to make a distribution to the Two Claimants.

**SO ORDERED** this 21st day of September, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE