IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ANGELO A. ALLECA, SUMMIT WEALTH MANAGEMENT, INC., SUMMIT INVESTMENT FUND, LP, ASSET CLASS DIVERSIFICATION FUND, LP, and PRIVATE CREDIT OPPORTUNITIES FUND, LLC<br><br>Defendants. | Civil Action No.<br>1:12-CV-3261-WSD |

### RECEIVER'S MOTION TO MODIFY THE DISTRIBUTION PLAN'S PROPOSED DISTRIBUTION TO CLAIMANTS 470 AND 485 AND MEMORANDUM OF LAW IN SUPPORT

In compliance with the Court's Opinion and Order of September 21, 2017 [Doc. No. 131] ("Order"), Robert D. Terry, the Court-appointed Receiver for Defendants Summit Wealth Management, Inc. ("Summit"), Summit Investment Fund, LP ("SIF"), Asset Diversification Fund, LP ("ACDF") and Private Credit Opportunities Fund, LLC ("PCOF" and, collectively with Summit, SIF, and

ACDF, the "Receivership Entities"), hereby requests that the Court modify the proposed Distribution Plan previously submitted by the Receiver by modifying the proposed distributions to Claimants 470 and 485.

## I. Procedural and Factual Background

In the Receiver's Motion to Approve Proposed Plan of Distribution [Doc No. 120] ("Motion") and the Amended Distribution Schedule [Doc No. 125], the Receiver proposed that $1,360,000 of receivership funds be distributed to 261 claimants who directly invested in the Receivership Entities and 18 other claimants who did not. Of the 18 other claimants, 14 are trade creditors with whom Summit had business relationships during the course of its operations and four were persons who had extended non-trade credit to Summit.

In the Summit Ponzi scheme, some victims of the fraud received interim distributions of funds during the course of the scheme, reducing their losses from the amounts originally invested, while others did not. The Motion proposed distributing the receivership assets according to the "rising tide" method. That method seeks to assure that claimants who have received little or no recovery receive a minimal percentage level of recovery before other claimants who have already recovered that same percentage or more receive additional funds.

The minimum distribution percentage that was calculated for the proposed

2

distribution was approximately 14.5%. In other words, the distribution sought to assure that all claimants would receive at least 14.5% of their claims. Claimants who had already received more than that percentage would receive nothing from that distribution, although, if there are subsequent distributions, more could be received.

Based upon this approach, a proposed distribution schedule and amended distribution schedule was filed with the Court, an opportunity for objections was provided, and a hearing was held. At the hearing, the Receiver, through counsel, raised the concern that two of the proposed distributions might equitably be reconsidered. Specifically, the Receiver proposed to the Court that the original proposed distributions to two claimants, claim No. 470 held by the Meyers Group ("Meyers") and claim no. 485 held by Bank of North Georgia ("BNG"), should be recalculated. In connection with this proposed amendment the Receiver proposed and recognized that those two claimants should then have the opportunity to address the Receiver's proposed amendment to their respective distributions. The

Court granted the Receiver's Motion and directed that the Receiver file his motion to modify the Distribution Plan as to Meyers and BNG.[1]

## II. Nature of Claims

The BNG claim arose from a promissory note entered into between BNG and Summit in August, 2011, for the purpose of providing "working capital" to Summit. The note in the original principal amount of $289,843.46, which bore interest at the rate of 5.5%, provided for monthly payments of $8,763.35 of principal and interest, and was scheduled to fully amortize in August, 2014. At the time of the filing of the receivership, the principal balance of the note was approximately $198,340.88. Twelve payments totaling $105,160.20 had been made, of which $13,657.62 was interest and $91,502.58 was principal.

The Meyers claim arose from a transaction entered into between Summit and Meyers in 2010 in which Meyers sold to Summit one of its investment advisory offices. The purchase price in that transaction, $1,221,582.00, was evidenced by a

---

[1]The Court's partial approval of the Receiver's distribution plan "allows claimants other than [Meyers and BNG] to receive distributions without further delay." As of this date the Receiver has not made any distributions, but was planning to mail the checks beginning October 10, 2017. Meyers, however, has recently filed a motion [Doc No. 132] in which it implies it would be prejudiced by any distributions being made prior to its having an opportunity to object and be heard with respect to the present proposed distribution. The Receiver maintains the position that the determination of the Meyers claim and the BNG claim should have no effect on the other distributions being distributed as calculated unless the Court changes the calculation method to something other than the rising tide method. However, in light of Meyers' motion, the Receiver will seek guidance from the Court as to whether distributions should be delayed.

4

promissory note in that amount dated April 21, 2010. The promissory note provided for three equal payments of $407,194, on or before July 15, 2011, July 15, 2012 and July 15, 2013, respectively. The payment due in 2011 was made. However, Summit failed to make the payment due in 2012. The receivership was imposed on Summit in September, 2012, so the 2013 payment was likewise not made.

In the Motion, the Receiver allowed as claims an amount owing to BNG and Meyers, respectively, as of the date the receivership was instituted. The BNG allowed claim was the aforementioned principal balance of $198,340.88, and the Meyers allowed claim was $855,107.40, which consisted of the $814,388 principal amount remaining under the promissory note plus a late fee of $40,719.40 for the July, 2012 payment.[2] Applying the rising tide calculation to those amounts resulted in a proposed distribution to BNG of $28,722.08 and to Meyers of $123,829.67. The present motion modifies those proposed distributions.

### III. Proposed Distribution Method and Application to Meyers and BNG Claims

As set forth in the proposed Distribution Plan, the formula for the calculation of a Claimant's pro rata distribution amount under the rising tide method is:

---

[2]The $40,719.40 late fee applied to the allowed claim represents the difference in the figures pointed out in footnote 3 of the Court's Order of September 21, 2017 [Doc No. 131]

5

**(allowed claim x pro rata multiplier)**

**– pre-receivership payments = distribution amount**

As opposed to the net investment approach, under the rising tide approach the amount of pre-receivership distributions a claimant receives are set off against the distribution from the receivership that the claimant may be due. To use pre-receivership distributions to reduce the amount of the allowed claim is inconsistent with the rising tide approach. By considering the initial investment amount as the allowed claim,[3] applying the rising tide calculation to that number, and then deducting any previous distributions, the claimant's total percentage recoveries are more consistent. This approach has generally been deemed to be more equitable in distributing receivership assets in Ponzi scheme cases.

Consistent with the rising tide method, the amount of the allowed claims of BNG and Meyers in this Motion are equal to the amount of the loans as represented by the initial promissory note amounts. In the original proposed Distribution Plan the Receiver determined the amount of the allowed claims to be the initial promissory amounts less any payments previously paid to BNG and

---

[3] In contrast to investors and lenders, trade creditors provided ongoing services, premises or the use of goods in the ordinary course of business in exchange for contemporaneous payments specifically identified to the items provided or the time period during which they were provided. The Receiver determined that the amount of credit extended in those circumstances, and thus the amount of the allowed claim, was the amount which was agreed to be paid for those services, premises or use of goods, but that was not paid.

Meyers. Counsel for the Receiver notified the Court at the hearing on the motion to approve distribution that the Receiver believed that the method of calculating the allowed claim reflected in the original proposed Plan was less appropriate than the method reflected in this modified proposed plan.

By properly considering the amount of the allowed claim as proposed in this modified proposed plan, the resulting distributions from the receivership to BNG and Meyers would be reduced to zero because both claimants have received an amount of pre-receivership payments in excess of the rising tide percentage (14.5%) of the allowed claim. Specifically, if BNG's allowed claim were the original note amount, $289,843.46, and the money received by BNG as loan payments were treated as withdrawals, under the modified Distribution Plan they would not be due any funds, since the amount they received in payments, $105,160.20, exceeds 14.5% of their allowed claim. Likewise if the Meyers' allowed claim is revised to the amount of the promissory note, $1,221,582, the money it received in payments, $407,194.00, exceeds 14.5% of the allowed claim.[4] Under the Receiver's modified plan, therefore, neither BNG nor Meyers would receive any funds from the forthcoming distribution.

---

[4]This result is the same whether or not the late fee in the amount of $40,719.40 due from Summit to Meyers is considered in the calculation of the allowed claim.

7

## IV. Conclusion

For the foregoing reasons, the Receiver proposes that the funds previously allocated to the BNG and Meyers distributions be retained in the receivership estate to be distributed to investors in a subsequent later distribution.

Respectfully submitted this 5th day of October 2017.

/s/ Robert D. Terry
Robert D. Terry
Georgia Bar No. 702606
bterry@parkmac.com

s/ Pratt Davis
Pratt H. Davis
Georgia Bar. No. 212335
Attorney for Receiver
Robert D. Terry

PARKER MACINTYRE
2987 Clairmont Road
Suite 200
Atlanta, GA 30329
(404) 490-4060 (phone)
(404) 490-4058 (facsimile)

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was prepared with one of the font and point selections approved by the Court in LR 5.1B. I further certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to counsel of record.

The foregoing was also served on the Summit claimants who provided Receiver Confirmed Electronic Mail Information (as defined in the proposed Plan), by electronic mail to the electronic mail address confirmed by each claimant, and by first class mail to all claimants for whom the Receiver did not receive Receiver Confirmed Electronic Mail Information. The Receiver is maintaining proof of mailing.

This 5th day of October, 2017

/s/ Robert D. Terry
Robert D. Terry

Parker MacIntyre
2987 Clairmont Road
Suite 200
Atlanta, GA 30329
(404) 490-4060 (telephone)
(404) 490-4058 (facsimile)