# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ANGELO A. ALLECA, SUMMIT WEALTH MANAGEMENT, INC., SUMMIT INVESTMENT FUND, LP, ASSET CLASS DIVERSIFICATION FUND, LP, and PRIVATE CREDIT OPPORTUNITIES FUND, LLC,<br><br>　　　　　　Defendants. | 1:12-cv-3261-WSD |

## OPINION AND ORDER

This matter is before the Court on The Meyers Group, Inc.'s ("TMG") Motion for Reconsideration [149], and Receiver Robert D. Terry's (the "Receiver") Motions for Settlement [145], [150].

## I.　BACKGROUND

On September 18, 2012, the SEC filed its Complaint [1], asserting securities fraud claims against Defendants Angelo A. Alleca ("Alleca"), Summit Wealth Management, Inc ("Summit"), Summit Investment Fund, LP ("SIF"), Asset Class Diversification Fund, LP ("ACDF") and Private Credit Opportunities Fund, LLC

("PCOF" and together with SIF and ACDF, the "Summit Funds"). The next day, the Court froze Defendants' assets and enjoined Defendants from violating the securities laws. ([7]). On September 21, 2012, the Court appointed Robert D. Terry as receiver for the estate of Summit and the Summit Funds (the "Receivership Entities.") ([9] at 2).

On June 6, 2017, the Receiver filed his original plan of distribution ([120], as amended [125], the "Original Plan"), proposing to distribute the receivership assets pursuant to the "rising tide" methodology. Under this allocation method:

> [T]he Receiver will deduct the amount of a Claimant's pre-receivership withdrawals *after* calculating the investor's pro rata share of any distribution. If the result is negative—meaning that the Claimant has already received pre-receivership withdrawals in excess of his or her calculated pro rata share of a distribution—that Claimant will not participate in that distribution, although he or she may participate in later distributions. This method preserves assets for those Claimants who have received nothing thus far and recognizes that some Claimants have already recovered a substantial percentage of their investment.

([120] at 18); see Commodity Futures Trading Comm'n v. Equity Fin. Grp., Inc., No. 04-cv-1512, 2005 WL 2143975, at *24 (D.N.J. Sept. 2, 2005) (discussing the rising tide methodology). "If approved, after taking into account any money received by investors prior to the Receivership, this distribution [plan] will represent a minimum recovery percentage among included Claimants of [14.5%]." ([120] at 14; [125] at 3; [125.1] at 1). On July 17, 2017, the Receiver filed minor

amendments to his Original Plan.  ([125]).

On September 19, 2017, the Court held a hearing on the Receiver's Original Plan.  ([130]).  Only the Receiver and his counsel attended the hearing.  The Receiver told the Court that his proposed Original Plan should be modified (the "Modified Plan") to ensure that claimants are treated consistently.  (Plan of Distribution Hearing Transcript (Sept. 19, 2017) ("Tr.") at 3).  Specifically, the Receiver sought to cancel his proposed distributions to TMG and the Bank of North Georgia ("BNG").

The Original Plan proposed distributing $123,829.67 to TMG and $28,722.08 to BNG.  ([125.1] at 6).  TMG asserted a claim based on a promissory note, dated April 21, 2010, in the original principal amount of $1,221,582.00.  (See [120] at 25; [133] at 3).  BNG asserted a claim based upon a promissory note dated August 25, 2011, in the amount of $289,843.46.  (See [120] at 25; [133] at 3).  Before the Receiver was appointed, Defendants paid some, but not all, of the money owed to TMG and BNG under the promissory notes.  They paid $407,194.00, to TMG and $105,160.20 to BNG (the "Payments").  ([133 at 4-5).  The Original Plan reduced the value of TMG's and BNG's "allowed claims"—that is, the amount from which they are entitled to a 14.5% recovery—by the amount of the Payments.  ([125.1] at 6).  The Receiver represented at the hearing on the

Original Plan that in order to conform to his treatment of other claimants, the Receiver concluded that the Payments should be deemed "pre-receivership withdrawals" rather than amounts by which the "allowed claims" are reduced. The Receiver stated that, if the Payments constitute pre-receivership withdrawals, TMG and BNG are not entitled to any distributions because they previously received more than 14.5% of the value of their promissory notes. (Tr. at 3-4, 7-8, 10). The Receiver asked the Court to approve the Original Plan except for the proposed distributions to TMG and BNG.

On September 21, 2017, the Court issued an order [131] (the "September 21 Order") granting the Receiver's Motion to Approve Plan of Distribution but ordering the Receiver to withhold distributions to TMG and BNG. The Court further ordered that the Receiver file a formal motion to modify the Original Plan to give TMG and BNG notice of the proposed revised treatment of their claims and to give them an opportunity to respond to the revision.

On October 4, 2017, TMG filed its Motion for a Court Conference, seeking (1) a stay of the September 21 Order to allow TMG more time to object to the Modified Plan; (2) discovery prior to objecting to the Modified Plan; (3) leave of court to file an action against the Receiver for breach of fiduciary duty; and (4) a court-ordered settlement conference. ([132]).

On October 5, 2017, the Receiver filed his Motion to Modify the Distribution Plan (the "Modified Plan"). ([133]). In seeking Court approval of the Modified Plan, the Receiver stated that a more equitable approach to TMG's and BNG's distributions would be to calculate their allowed claims as the amount of their original notes, as opposed to the amount of their original notes, minus payments received before the Receiver was appointed. Under this method BNG and TMG would not be entitled to a distribution because both claimants received an amount of pre-receivership payments in excess of the rising tide percentage (14.5%) of the allowed claim.

On October 26, 2017, TMG filed its Opposition to the Receiver's Motion to Modify the Plan. ([137]).

On November 16, 2017, the Court granted the Receiver's Motion to Modify the Distribution Plan (the "November 16, 2017, Order"). ([144]). The Court also denied TMG's motion seeking a court conference, a stay of distributions to other claimants, discovery from the receiver, and leave to initiate an action against the Receiver for breach of fiduciary duties. (Id.).

On November 20, 2017, the Receiver filed a Motion for Settlement seeking (1) approval of a proposed settlement of a disputed claim for damages by the Receiver against Alexandria Capital, LLC, (2) entry of a bar order, and (3)

approval of a form of notice related to the settlement and bar order. ([145]).

On November 24, 2017, TMG filed its Motion for Reconsideration of the November 16, 2017, Order approving the Receiver's modification. ([149]).

On November 30, 2017, the Receiver filed its Motion for Settlement seeking approval of a proposed settlement of a disputed claim made by BNG. ([150]).

## II. DISCUSSION

### A. Motion for Reconsideration

Motions for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion. See Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007); O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992); Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Jones v. S. Pan Servs., 450 F. App'x 860, 863 (11th Cir. 2012) ("A motion to alter or amend a judgment cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment."); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996) ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better'

the first time."). Whether to grant a motion for reconsideration is within the sound discretion of the district court. See Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993).

TMG's Motion for Reconsideration reiterates the objections and arguments it made in response to the Receiver's modification of the Original Plan. The modification was made for the reasons stated in the Court's November, 16, 2017, Order. TMG opposes the Modified Plan's "pooling" of funds, and argues that the assets of the Summit Funds should be separated from those of Summit Wealth Management, and trade claimants (such as TMG) should be paid from the assets of Summit Wealth Management. TMG again argues that the prior payments it received on the amount owed to it should be subtracted from the total amount owed and should not be subtracted from the rising tide theory claim amount the Court calculated was payable to TMG. The Court considered these same arguments in the November 16, 2017, Order. (See November 16, 2017, Order [144] at 13-14). TMG does not present the Court with any new evidence, an intervening change in the law, or the need to correct clear error or prevent manifest injustice that warrants reconsideration. TMG was able to object to the Modified Plan in its submission on the Modified Plan submitted by the Receiver, and the Court considered TMG's arguments in approving the Modified Plan in the

November 16, 2017, Order. That TMG disagrees with the Court's ruling in the November 16, 2017, Order is not a basis for reconsideration. TMG's Motion for Reconsideration is denied.

B. <u>Motions for Settlement of Disputed Claims</u>

"The district court has broad powers and wide discretion to determine relief in an equity receivership." <u>S.E.C. v. Elliott</u>, 953 F.2d 1560, 1566 (11th Cir. 1992); <u>see also</u> <u>S.E.C. v. Kaleta</u>, 530 F. App'x 360, 362 (5th Cir. 2013). In determining whether to approve a proposed settlement in a receivership, a district court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

<u>In re Justice Oaks II, Ltd.</u>, 898 F.2d 1544, 1549 (11th Cir. 1990).[1] The district court's powers to fashion relief in an equity receivership include "the court's inherent equitable authority to issue a variety of 'ancillary relief' measures in

---

[1] <u>In re Justice Oaks II</u> addressed the approval of a settlement in a bankruptcy matter. The Receiver has not provided, and the Court has not found, any specific guidance from the Eleventh Circuit on approving settlements in a receivership. Because a receivership estate is comparable to the estate administered in a bankruptcy case, the Court will consider the factors used by the bankruptcy courts, as approved by the Eleventh Circuit, to determine if the Settlement Agreement should be approved.

8

actions brought by the SEC to enforce the federal securities laws." Kaleta, 530 F. App'x at 362 (quoting S.E.C. v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980)). "Such 'ancillary relief' includes injunctions to stay proceedings by non-parties to the receivership." Id.

### 1. The Bank of North Georgia Settlement

The Receiver seeks approval of a proposed settlement of BNG's claim of lien against funds that BNG turned over to the Receivership in 2012. At that time, BNG requested, and the Receiver agreed, that the Receiver would hold the funds pending a determination by the Court of BNG's claim of lien against the funds. For that reason, the Receiver had not determined whether the funds were property of the Receivership, and postponed the ownership determination. The Receiver notified the Court that ownership of the funds was "at issue" and that the matter "would be presented to the Court at a later date." (Mot. to Approve Plan of Distribution and Mem. of Law in Supp. [120] at 14, n.2).

BNG claims it holds a valid first priority security interest in funds held in a bank account in the name of Summit (the "Account").[2] BNG claims that it held its

---

[2] The Agreement governing the Account provides, in relevant part:

SET-OFF - [Summit] agree[s] that [BNG] may (without prior notice and when permitted by law) set-off the funds in this account against any due and payable debt owed to [BNG] now or in the future, by any

9

security interest before BNG received notice of the September 21, 2012, Order appointing the Receiver. The security interest arose from the Universal Note and Security Interest (the "Loan Agreement") between Summit and BNG that provided a security interest in favor of BNG's inventory, equipment, accounts, instruments, and general intangibles. ([150.3]).[3] BNG made the claim of lien by letter to the Receiver dated September 28, 2012, and reiterated the claim in a filing with the Court on October 2, 2012. ([13]).

The Settlement with BNG provides for payment by the Receiver of $18,692.52 to BNG, and the release by BNG of any and all other claims against the Receivership related to the Account or the loans governed by the Loan Agreement. The Receiver considered the validity of BNG's claim, the value of the

---

> [account holder] having the right of withdrawal, to the extent of such person's or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which [BNG is] entitled to demand payment under the terms of the note at the time [BNG] set[s] off, including any balance the due date for which we properly accelerate under the note.

([150.4] at 3).

[3] The Loan Agreement provides for a right of set-off as follows:

> SET-OFF – [Summit] agrees that [BNG] may set off any amount due and payable under this note against any right [Summit has] to receive money from [BNG]. "Right to receive money from [BNG]" means . . . any deposit account balance [Summit has] with [BNG].

([150.3]).

consideration received for the Receivership, the expenses of litigation, and the likelihood of BNG's success in seeking approval of its claim. Having considered the Receiver's submission, the Court finds that the settlement is fair, reasonable, and adequate. The Court approves the proposed settlement with BNG.

2. Alexandria Capital, LLC Settlement

The Receiver seeks Court approval of the settlement of a disputed claim for damages by the Receiver against Alexandria Capital LLC ("Alexandria"), entry of a bar order, and Court approval of the Receiver's proposed form of notice related to the proposed settlement and bar order. ([145]). If approved, the settlement will result in the payment of $77,000 to the Receivership Estate.

Because a bar order is requested, the Court will provide potential claimants with notice and an opportunity to object to the proposed settlement and bar order. (See [109]). The Court has reviewed the Proposed Notice of Receiver's Motion for Approval of Settlement of Disputed Claim and Settlement Agreement, and for Entry of a Bar Order ([145.2] the "Notice"), attached as modified as Exhibit A to this Order. The Court determines the Notice adequately summarizes the settlement, its terms, and the potential impact of the bar order. The Notice and procedures detailed therein give sufficient opportunity to object to the proposed settlement and bar order. The Notice is approved. On or before June 1, 2018, the

Receiver shall send the Notice to each person who will or could be impacted by the approval of the settlement with Alexandria and the bar order. On or before June 1, 2018, the Receiver shall file with the Court a list of each person to whom the Notice is sent.

### III. CONCLUSION

For the foregoing reasons,

**IT IS FURTHER ORDERED** that The Meyers Group, Inc.'s Motion for Reconsideration [149] is **DENIED**.

**IT IS FURTHER ORDERED** that the Receiver's Motion for Settlement of BNG's claim [150] is **GRANTED** and the Settlement Agreement [150.1] between the Receiver and BNG is **APPROVED**.

**IT IS FURTHER ORDERED** that the Receiver's Motion for Approval of Settlement of Disputed Claim and Settlement Agreement and for Entry of Bar Order and Approval of Form of Notice [145] is **GRANTED IN PART** and **DEFERRED IN PART**. It is **GRANTED** insofar as the Proposed Notice of Receiver's Motion for Approval of Settlement of Disputed Claim and Settlement Agreement, and for Entry of a Bar Order ([145.2]), as modified and attached as Exhibit A to this Order, is **APPROVED**. On or before June 1, 2018, the Receiver shall send the Notice to each person who will or could be impacted by the approval

of the settlement with Alexandria and the bar order. On or before June 1, 2018, the Receiver shall file with the Court a list of each person to whom the Notice is sent. The Court **DEFERS** ruling on the proposed settlement and bar order pending the opportunity for objections as provided in the Notice.

**SO ORDERED** this 18th day of May, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>ANGELO A. ALLECA, SUMMIT WEALTH MANAGEMENT, INC., SUMMIT INVESTMENT FUND, LP, ASSET CLASS DIVERSIFICATION FUND, LP, and PRIVATE CREDIT OPPORTUNITIES FUND, LLC,<br><br>        Defendants. | 1:12-cv-3261-WSD |

**NOTICE OF RECEIVER'S MOTION FOR APPROVAL OF SETTLEMENT OF DISPUTED CLAIM AND SETTLEMENT AGREEMENT, AND FOR ENTRY OF A BAR ORDER**

This Notice contains important information regarding the Receiver's Motion for Approval of Settlement of Disputed Claim and Settlement Agreement, and for Entry of Bar Order, including important dates and deadlines.

On November 20, 2017, Robert D. Terry, the Receiver for Summit Wealth Management, Inc. ("Summit") and for three investment entities created by Summit's president (collectively, the "Summit Entities") filed a Motion for Approval of Settlement of Disputed Claims and Settlement Agreement, and for Entry of Bar Order (the "Motion"), seeking Court approval of a proposed

1

settlement of a disputed matter (the "Settlement Agreement") with Alexandria Capital, LLC ("Alexandria").

If the Court grants the Motion, Alexandria would make two (2) cash payments to the Receivership Estate totaling $77,000 in exchange for a release of all claims the Receiver, the Receivership Entities and third parties may have against Alexandria related to the claims described in the Settlement Agreement.

**The entry of a Bar Order is a condition precedent that must occur before the Settlement Agreement becomes effective. If the Bar Order is entered, any claims you have or believe you have against Alexandria, other than a claim filed in the Receivership, will be released, and you will no longer be able to pursue those claims.**

The documents relevant to the Motion, together with exhibits, are available in electronic format at no cost on the Receivership Estate's website at http://www.swmreceivership.com. In addition, you may contact counsel for the Receiver at the address or telephone number shown below and request a copy of all relevant documents. They will be provided to you by your choice of email or regular mail at no cost.

The principal features of the Settlement Agreement are: (1) payment by Alexandria of the total sum of $77,000 ("Settlement Consideration") to the

Receivership Estate, and (2) the entry of a Bar Order preventing future claims by any party, in any forum, against Alexandria based upon claims that are released in the Settlement Agreement. The Bar Order is necessary to make the Settlement Agreement effective, since the Settlement Agreement is expressly conditioned on a bar order to prevent future claims being made against Alexandria.

If the Bar Order is entered by the Court, all third parties, including investors in the Summit Entities, will be enjoined from taking any adverse action against Alexandria, including the commencement or continuation of any legal proceeding against Alexandria arising out of, in connection with, or relating to any claims set forth in the lawsuits <u>Robert D. Terry v. Alexandria Capital, LLC</u>, United States District Court for the Northern District of Georgia, Atlanta Division, Civil Case No. 1:17-CV-03678 ("Alexandria Lawsuit") and <u>Mistina v. Alexandria Capital, LLC</u>, United States District Court for the Eastern District of Virginia, Civil Case No. 1:13- CV-00692/CMM/TRJ.[1]

Nothing in the Bar Order will impair the rights of any Receivership Estate claimant from instituting or continuing any claims against any person, or against any third parties, except as to Alexandria as provided in the Bar Order. Likewise, nothing in the Bar Order will impair the rights of any Receivership Estate claimant

---

[1] Nothing herein should be construed or intended to modify the terms of the proposed Bar Order. You are encouraged to review the Bar Order carefully.

3

from participating in the claims process associated with the ultimate distribution of Estate assets at the conclusion of the Receivership.

As stated in the Motion and Memorandum, the Receiver believes that the Settlement Agreement, including the entry of a Bar Order is fair, equitable and reasonable, and in the best interest of the Receivership Estate and its claimants. The Settlement Consideration is an amount representing approximately 55.6% of the alleged damages in the Alexandria Lawsuit. The Receiver believes this amount fairly resolves the Estate's claims in light of the following factors:

(1) the available defenses to Alexandria in the Alexandria Lawsuit including but not limited to Alexandria's contention that the original contract on which the Receiver bases his breach of contract claim may be deemed void or voidable;

(2) the likelihood that, absent a settlement, the funds available to Alexandria to fund the settlement will be exhausted by litigation costs;

(3) the claimed right of payment by Summit may be defeated in whole or in part by the unclean hands or other misconduct of Summit or its agents, including Angelo Alleca;

(4) the claimed right of payment may be defeated by the total or partial failure of consideration;

4

(5) the claimed right of payment may be defeated, in whole or in part, by post-transaction conduct by Alleca that may negatively affect the amount of damages;

(6) the inability of Alexandria to pay any judgment that may be entered;

(7) the delay in obtaining any judgment and pursuing collection; and

(8) the projected costs to the Receiver in continuing to pursue a judgment and collection, which costs could eventually exceed any amounts collected.

**Important Deadlines and Information Regarding Filing Objections**

**Please review the following information carefully:**

**I.** **Deadline for Objections:**

A. Any objection to the Settlement Agreement and entry of a Bar Order must be filed on or before July 13, 2018, with the Clerk's Office of the United States District Court for the Northern District of Georgia, Richard B. Russell Federal Building 2211 United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303.

B. Any objection must contain the following information:

(1) The name of person or entity making an objection, including their contact information (addresses, telephone number(s) and email address(es)), if applicable;

(2) If a claim has already been filed by the objector in court or in an arbitration proceeding, the caption of the case, setting forth the name of the court, the names of the plaintiff, and defendants, and the case number as noted above;

(3) A concise statement setting forth the reasons why the proposed settlement should not be approved and the Bar Order entered; and

(4) All documentation or other evidence of upon which the person or entity making the objection will rely in opposing the Settlement Agreement and entry of a Bar Order.

II. **Opportunity to be Heard:**

A hearing to approve the Settlement Agreement and entry of a Bar Order will be held on a date to be later determined by the Court.

III. **Inquiries**

A copy of all documents relevant to the Settlement Agreement and entry of Bar Order, including the Motion filed by the Receiver and all exhibits to the Motion, and the Memorandum of Law in support of the Motion, are available for download at no cost on the Receiver's website at http://www.swmreceivership.com.

You may also contact counsel for the Receiver at the address or telephone number shown below and request a copy of all relevant documents. They will be provided to you by your choice of email or regular mail at no cost.

Please direct all questions to the undersigned.

/s/ Robert D. Terry
Robert. D. Terry
Georgia Bar No. 702606
*Receiver*

Parker MacIntyre
2987 Clairmont Road
Suite 200
Atlanta, GA 30329
Tel:  404-490-4060
Fax:  404-490-4058
bterry@parkmac.com