# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | * * * | |
| Plaintiff, | * * | |
| v. | * * | 1:12-CV-03261-ELR |
| ANGELO A. ALLECA, et al., | * * * | |
| Defendants. | * * | |

# O R D E R

There are several matters presently pending before the Court. The Court sets forth its reasoning and conclusions below.

## I.  Background[1]

In September 2012, the Securities and Exchange Commission [("SEC")] filed a receivership action alleging that [Defendant] Angelo Alleca was operating a Ponzi scheme through several of his companies, including Summit Wealth Management, Inc. ("Summit"). Th[is C]ourt appointed a receiver, Robert D. Terry (the "Receiver"), and authorized him to recover and secure assets belonging to Summit, among other things. The [C]ourt also ordered a stay of all civil litigation involving any receivership property or entities until further order of the [C]ourt, and it tolled any applicable statute of limitations for claims asserted by the Receiver while the stay order remained in effect.

---

[1] For additional factual and procedural background, the Court refers to its Order dated September 9, 2021. [Doc. 218].

As relevant here, the Receiver alleged that a pre-receivership exchange between Summit and [Intervenor Carrie] Mistina, Summit's Chief Financial Officer, was fraudulent and therefore voidable. The exchange concerned an August 2011 agreement between Summit and a third-party, Alexandria Capital LLC, under which Summit would receive payments on an annual basis beginning in October 2012 based on fees generated from certain investment accounts (the "Note"). In August 2012, Mistina paid Summit $30,000 of her personal funds in exchange for the right to receive the four annual payments due Summit under the Note, which had an estimated value of between $130,000 and $225,000.

Mistina filed a claim for $225,000 in the receivership action and otherwise asserted her ownership of the Note and contested the Receiver's assertion that the transfer was fraudulent. Although the Receiver repeatedly offered his view that the transfer was fraudulent, he never sought to prove the matter to the [ C]ourt, despite indicating on multiple occasions that he would do so. Instead, he simply treated the assets as part of the receivership estate—i.e., he treated the transfer as a fraudulent conveyance—for purposes of the distribution plan, which th[is C]ourt ultimately approved in September 2017.

On appeal, [the United States Court of Appeals for the Eleventh Circuit] vacated and remanded for further proceedings, holding that these procedures denied Mistina due process. Sec. & Exch. Comm'n v. Terry, 833 F. App'x 229, 234–35 (11th Cir. 2020) (quotation marks omitted). [The Eleventh Circuit] stated that district courts in receivership cases "may use so-called 'summary proceedings,' which promote judicial efficiency, so long as the procedure provides claimants with due process." Id. at 232. But [it] explained that "the issue of whether a pre-receivership transfer was fraudulent 'required an evidentiary hearing' where the claimants could 'present and argue their facts' and 'rebut the characterization of the transfer and present affirmative defenses.'" Id. at 233, 235 (quoting Sec. & Exch. Comm'n v. Elliott, 953 F.2d 1560, 1568 (11th Cir. 1992)). Because Mistina was not afforded those minimum procedures, [the Eleventh Circuit] remanded with instructions to give her a "full and fair opportunity" to rebut the characterization of the transfer before she was deprived of her property interest in the Note. Id. at 235.

> On remand, th[is C]ourt held an evidentiary hearing after a period of limited discovery. Both the Receiver and Mistina testified at the hearing, and the [P]arties offered various exhibits in evidence.
>
> At the evidentiary hearing, Mistina testified about the circumstances of the transfer. She explained that Alleca, Summit's President and CEO, had proposed assigning the Note to her in exchange for $30,000 of her personal funds because the premium for Summit's $3 million errors and omission policy (the "E&O policy") was due and Summit was short on cash. After transferring $30,000 of her personal funds to Summit, Mistina then promptly paid the approximately $37,000 premium for the E&O policy out of Summit's account.
>
> The other evidence largely confirmed Mistina's account. Bank records showed that, on the date of the Note assignment in August 2012, before the premium was paid, Summit's account had a balance of $20,646.42. In addition, the Receiver acknowledged that a "substantial portion" of Mistina's funds were used to pay the insurance premium, even if a precise amount could not be determined, and that, "but for that money, the insurance premium . . . would not have been made." Ultimately, the insurer paid nearly $1.5 million under the policy to the receivership estate. That insurance payment accounted for roughly 80% of the total assets collected by the Receiver.
>
> [In an Order dated September 9, 2021,] [t]he [ C]ourt concluded that the transfer of the Note to Mistina was a fraudulent conveyance based on "constructive" fraud under O.C.G.A. § 18-2-74(a)(2). The [C]ourt reasoned that the receipt of $30,000 by Summit was not reasonably equivalent value for selling an income stream of up to $225,000. The [C]ourt rejected Mistina's claim that Summit received the benefits of the E&O policy. The [C]ourt was "not persuaded that the value of the coverage amount for the errors and omissions insurance policy can be attributed to Mistina" because there were other funds in Summit's account at the time the premium was paid, and it was not "Mistina's deposit alone that paid the insurance premium." The [C]ourt also found that Summit was insolvent at the time of the transfer, which Mistina does not dispute.

Sec. & Exch. Comm'n v. Alleca, 2022 WL 16631325, at *1–2 (11th Cir. 2022).

Subsequently, on October 5, 2021, Mistina appealed the Court's September 9, 2021 Order in which this Court found that the transfer of the Note to Mistina was a fraudulent conveyance, overruled Mistina's objection to the agreement between the Receiver and Alexandria Capital LLC, and approved that agreement. [See Docs. 218, 219]. On appeal, the Eleventh Circuit held that this Court "clearly erred in finding that the E&O policy was not attributable, at least in substantial part, to Mistina's payment of $30,000 to Summit in exchange for the right to receive the four annual payments due under the Note." See Alleca, 2022 WL 16631325, at *6. The Eleventh Circuit concluded that Summit received an indirect benefit as a result of the $30,000 transfer from Mistina "because it needed immediate funds to pay the premium on its $3 million E&O policy, which it promptly paid upon receiving" the funds from Mistina. See id. at *5. Indeed, "such an insurance policy w[as] of substantial benefit to a company ostensibly offering investment advice," as evidenced by the fact that the E&O policy "ultimately paid out nearly $1.5 million to the receivership estate." See id. Thus, because "a substantial portion of Mistina's money was used to pay the insurance premium" and "but for that money, the insurance premium . . . would not have been made[,]" the Eleventh Circuit reasoned that this Court erred in finding that the "E&O policy was not attributable—even if not fully so—to the funds Summit received from Mistina." See id. at *6 (internal quotation omitted). Put differently, the conveyance of the Note from Summit to

Mistina was legitimate and valid rather than fraudulent. See id. The Eleventh Circuit accordingly "vacate[d] th[is C]ourt's September 9, 2021 [ O]rder overruling Mistina's objection and approving the settlement agreement between the Receiver and Alexandria, and [] remand[ed] for further proceedings consistent with [its] opinion." See id. On January 5, 2023, the Court Ordered "that the mandate of the United States Court of Appeals be and it hereby is made the judgment of this Court." [Doc. 231].

Mistina filed her "Motion to Implement Remanded Judgment" on April 12, 2023. [Doc. 233]. The Receiver opposes Mistina's motion. [Doc. 234]. On August 14, 2023, the Receiver filed his unopposed "Motion to Extinguish Claim of Carrie Mistina (Claim # 472) and to Modify the Court-Approved Plan of Distribution." [See Docs. 236; 237 at 1 (Mistina stating that she consents to the Receiver's motion)].

## II.  Mistina's "Motion to Implement Remanded Judgment" [Doc. 233]

Mistina requests that the Court enter judgment declaring the following:

1. That this Court's September 9, 2021[] Order overruling . . . Mistina's Objection[] and approving the settlement between Receiver . . . and Alexandria Capital LLC is vacated;

2. That . . . Mistina's Objection to the settlement between Reciever . . . and Alexandria Capital LLC is sustained;

3. That Summit . . . validly assigned full ownership of its August 1, 2011 [Note] with Alexandria Capital[] LLC[] to . . . Mistina by written agreement on August 21, 2012;

5

  4.  That all ownership or other interest claims to the Note by the Summit Wealth, Inc. Receivership, or anyone acting on its behalf, including [the] Receiver . . . or the [SEC], or by Alexandria Capital[] LLC, are void and without basis in law or equity; and,

  5.  That . . . Mistina is the full and sole legal owner of the Note.

[See Doc. 233 at 2]. In his response brief, the Receiver's lone, conclusory argument is that Mistina's requested judgment "goes beyond the . . . Eleventh Circuit's . . . opinion . . . and the mandate entering that opinion[.]" [See Doc. 234 at 1–2].

Upon review and consideration, the Court finds that Mistina's requested relief is consistent with the Eleventh Circuit's opinion and mandate in this case. The Eleventh Circuit (1) vacated this Court's September 9, 2021 Order overruling Mistina's objection and approving the Receiver's settlement agreement and (2) found that this Court clearly erred in concluding that Summit's conveyance of the Note to Mistina constituted constructive fraud. See Alleca, 2022 WL 16631325, at *5–6. Thus, because Summit's transfer of the Note to Mistina was legitimate and not fraudulent, it follows that Mistina is the valid owner of the Note. See id. In this regard, the Eleventh Circuit's opinion and mandate to the Court "d[oes] not leave room for confusion or genuine doubt. It [is] not vague or ambiguous. [Its] instructions . . . [are] clear[.]" See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 881 F.3d 835, 844 (11th Cir. 2018) (reprimanding the district court for ignoring the clear holding of its opinion on remand and stating that "[w]e don't know what else we

could have said other than, perhaps, 'and we really mean it.' Well, we really did mean it. And we still do."). And the Receiver has made no attempt to contest Mistina's proposed findings or provide any other interpretation of the Eleventh Circuit's opinion and mandate in his short response brief beyond unsupported, conclusory assertions that Mistina's motion simply does not align with the Eleventh Circuit's findings. [See Doc. 234]. To the contrary, a plain reading of the Eleventh Circuit's opinion clearly supports Mistina's requested relief. See generally Alleca, 2022 WL 16631325; [see also Doc. 236-1 at 2] (the Receiver's motion to extinguish Mistina's claim admitting that Mistina prevailed before the Eleventh Circuit in "having the fraudulent conveyance determination overruled, which had the effect of confirming the validity of the assignment to her as against the Receiver's claim"). Therefore, the Court grants Mistina's motion and adopts the proposed findings therein.

### III. Receiver's "Motion to Extinguish Claim of Carrie Mistina (Claim #472) and to Modify the Court-Approved Plan of Distribution" [Doc. 236]

In his motion, the Receiver requests that this Court extinguish Mistina's separate claim to a portion of the receivership estate because it was filed "only to preserve her rights in the event she was not successful in her contention that certain proceeds of a sale transaction involving Alexandria Capital[] LLC[] were her personal property and could not be claimed as assets of the receivership estate." [See Doc. 236-1 at 2]. As the Receiver concedes and as the Court discussed above, the

Eleventh Circuit ultimately concluded that Summit's conveyance of the Note (which includes Mistina's right to collect payments based on fees generated from certain investment accounts with Alexandria Capital LLC) did not constitute a fraudulent conveyance. [See id.] And Mistina consents to the Receiver's motion. [See Doc. 237]. Therefore, the Court grants the Receiver's motion.

## IV. Remaining Matters

On January 3, 2023, the Receiver submitted a status update by which he represents that he will (1) no longer pursue a settlement with Alexandria Capital LLC following the Eleventh Circuit's opinion vacating the previously approved settlement agreement with that entity, (2) seek dismissal of the separately-filed suit against Alexandria Capital LLC, (3) begin the final winding down of the Receivership, (4) file a petition for payment of fees, and (5) file a motion to close the Receivership and make final distributions. [See Doc. 228]. The Court directs the Receiver to provide status updates regarding these tasks and any other outstanding matters within ninety (90) days from the date of this order and every ninety (90) days thereafter until this matter is fully concluded.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Mistina's "Motion to Implement Remanded Judgment" [Doc. 233] and **GRANTS** the Receiver's "Motion to Extinguish Claim of Carrie Mistina (Claim # 472) and to Modify the Court-

Approved Plan of Distribution." [See Doc. 236]. Accordingly, the Court **SUSTAINS** Mistina's "Objection to Settlement Between Receiver and Alexandria Capital, Inc. [sic], and to Proposed Bar Order." [Doc. 161]. The Court **DIRECTS** the Receiver to administer the Receivership in a manner consistent with this order. The Court further **DIRECTS** the Receiver to file a status update within ninety (90) days of this order and every ninety (90) days thereafter until this matter is fully resolved. Because there are no pending or anticipated tasks for the Court at this time, the Court finds that the most prudent course of action is to remove this case from its active docket. Therefore, the Court **DIRECTS** the Clerk to **ADMINISTRATIVELY CLOSE** this case.[2]

      **SO ORDERED**, this 17th day of October, 2023.

*/s/ Eleanor L. Ross*
_____
Eleanor L. Ross
United States District Judge
Northern District of Georgia

---

[2] The Court notes that administrative closure will not prejudice the rights of any Party to this litigation. A Party need only file a motion to reopen the case if it so chooses.